WILLIAM B. VAN HORN, RELATOR-PLAINTIFF IN ERROR, v. JOHN D'ARCY, RESPONDENT-DEFENDANT IN ERROR.

Submitted July 6, 1914—Decided March 1, 1915.

1. Under the provisions of the Civil Service law (*Comp. Stat., p.* 3975) the officials of the county jail which adopt its provisions are protected from removal without charges preferred against them, and a hearing had thereon.

NOTE.—This opinion was rendered at the March term, 1915, and should have been published with the opinions for that term, but was overlooked by the reporter.—REP.

2. Relator was appointed jailer of the Mercer county jail by the board of chosen freeholders, under the provisions of section 2 of the act of 1887 (*Pamph. L.*, *p.* 42) authorizing the appointment of a "keeper or warden" of the county jail, and continued to perform the duties of warden until 1910, when he was elected custodian of the court house, combining the duties of that office with that of-jailer. In December, 1911, relator was notified by the sheriff of the appointment of respondent as warden, and thereupon surrendered that office, retaining the position of custodian at the same salary until the position was abolished, and brought no action to contest his removal as jailer until the year 1913. *Held*, that the relator's continuance in the office of custodian, after the two offices were made distinct, was a relinquishment on his part of the office of jailer.

On error to the Supreme Court.

For the plaintiff in error, *James & Malcolm G. Buchanan.*

For the defendant in error, *Edward L. Katzenbach.*

The opinion of the court was delivered by

KALISCH, J. An information in the nature of a *quo warranto* was filed in the Supreme Court, by the attorney-general, at the relation of William B. Van Horn, the plaintiff in error, who claimed to be the warden of the jail of Mercer county and assailed the right of John D'Arcy, the respondent, to hold that office. Upon the trial of the issue presented the trial judge directed a verdict for the defendant upon the ground that the relator, plaintiff in error, had voluntarily surrendered his right to the office.

The legal propriety of this ruling can only be ascertained by an examination of the facts upon which the ruling was made. On the 10th day of May, 1898, the relator was appointed jailer of the Mercer county jail, by the board of chosen freeholders of the county, which board, under section 2 of the act of 1887, was authorized to appoint a "keeper or warden" of the county jail, whose term should be five years and until his successor should be appointed and qualify in his stead. *Pamph. L.* 1887, *p.* 42.

Since, by virtue of his appointment, the relator, as jailer,

had the custody and control of the jail, subject to the rules and regulations of the board of chosen freeholders, it becomes wholly immaterial to the subject in controversy whether or not he was termed jailer, keeper or warden of the county jail. The duties which he was called upon to perform were those which were imposed upon a warden or keeper of the county jail.

By an act entitled "An act to regulate the custody of county jails and of prisoners therein," approved March 23d, 1900, the sheriff of Mercer county was clothed with the charge and custody of the county jail and authorized to appoint a jailer or warden thereof. *Pamph. L.* 1900, *p.* 474.

The proof shows that the relator continued to perform the duties of warden under his original appointment through the successive terms of the respective sheriffs of the county from and after the passage of the act of 1900, with their approval and consent until December, 1911, when he was notified, in writing, by the sheriff that he had appointed the respondent warden of the county jail, which notice was accompanied by the sheriff's written request that the relator turn over to the respondent the keys of the jail, "and all books, accounts and paraphernalia attending the same."

The provisions of the Civil Service law of 1908 (3 *Comp. Stat., p.* 3795) had been adopted in Mercer county prior to this action of the sheriff.

It appears that upon the receipt of the sheriff's written request above stated, the relator consulted counsel as to his legal *status* in the matter and was advised by him that under the law the sheriff's act was proper.

It is claimed that the relator was rightly advised by his counsel as to the state of the law, as then established by the cases of *Virtue* v. *Freeholders of Essex County,* 67 *N. J. L.* 139, and *Arbuckle* v. *Kelly,* 78 *Id.* 94, and that in surrendering the office he acted upon the advice received. But be this as it may, under the facts of this case, it is without legal significance.

It further appeared by the proofs that on the 1st day of January, 1910, the relator was elected custodian of the court

house, by the board of chosen freeholders, for a term of three years, the salary of which office and that of jailer combined was $1,800 per year. The office of custodian was abolished January 2d, 1911. The relator, however, kept the office alive and continued therein for a period of six months after his surrender of the office of jailer, by reason of an action which he instituted to retain the office of custodian of the court house, which proved unsuccessful, but, during its pendency, he drew and received the same monthly salary as he had been receiving for services as custodian of the court house and jailer.

In March, 1913, in the case of *Sullivan* v. *McOsker*, 84 *N. J. L.* 380, it was decided by this court that the officials of the county jail were protected by the Civil Service law, and that the removal of an official therefrom without charges preferred and a hearing given thereon was unlawful.

No action was taken by the relator to contest the lawfulness of his removal from the office of jailer until June 28th, 1913. The facts related were undisputed and the trial judge decided, as a matter of law, that the relator's surrender of the office was a voluntary one, and directed a verdict for the defendant. We think the action of the trial judge was proper.

The main contention of the plaintiff in error is that the question whether or not the surrender of the office of jailer by the relator was voluntary was a jury question. We think that under the circumstances detailed it was purely a court question.

The case under consideration differs materially from *Breintnall* v. *Sadler*, 82 *N. J. L.* 405, on which counsel of plaintiff in error relies to sustain his contention that the trial judge erred in taking from the jury the determination of the question whether or not the acts of the plaintiff in error were equivalent to a voluntary surrender of the office of jailer.

The facts of the case at bar are so entirely different from those of the Breintnall case as to preclude any analogy between the two cases. In the Breintnall case there was a non-suit. One of the circumstances relied on by the defendant that the relator had voluntarily retired from office was a state-

ment made by the governor in the executive order, introduced in evidence, that the relator was retired from the office of adjutant-general on his own application.

Mr. Justice Garrison, speaking for this court (on *p.* 407), after stating that the issue presented was whether the relator voluntarily surrendered the office and that it was error to nonsuit, says: "This error, as we see it, resulted from the trial court's giving conclusive effect to the recital contained in the executive order, viz., that it was made 'on his (General Breintnall's) own application.' This recital, so far from being conclusive evidence of the truth of the fact therein stated, was not even evidential of the said fact as against the relator, unless he had authorized such a statement to be inserted in said order, or at least had knowledge that it was so inserted, neither of which conclusively appeared. On the contrary, as to each of these matters, conflicting inferences might legitimately be drawn by the jury."

But the situation in the case *sub judice* is that the plaintiff in error, while jailer, was appointed custodian of the court house, and when the two offices were separated, by the appointment of the defendant as jailer, the plaintiff in error elected to surrender the office of jailer and to hold that of custodian of the court house. He was not in a position to complain, for he had less onerous duties to perform and was receiving the same salary which he had been previously receiving for performing the services required by both offices. The relator's continuance in the office of custodian after the two offices were made distinct was a decided act of relinquishment on his part of the office of jailer.

This circumstance gives rise to no reasonable inference that the relator did not intend the direct result of his act. On the contrary, the only permissible inference to be drawn from his act, is that the relator elected to hold the office of custodian of the court house only, at the same salary that he had been receiving as jailer and custodian. The fact that the board of chosen freeholders subsequently abolished the office of custodian is immaterial. When the plaintiff accepted the office of custodian he took it subject to the right of the legis-

lative body who created it, to abolish it when the public good required that that should be done. *Paddock* v. *Hudson Tax Board*, 82 *N. J. L.* 360; *Van Horn* v. *Board of Freeholders*, 83 *Id.* 239.

Furthermore, when the sheriff demanded that the relator deliver the keys, &c., of the jail to the defendant, there was nothing in the way to prevent the relator from refusing to comply with the demand, and to test the legality of his removal, despite the legal advice he had received, in the highest tribunal of the state. The relator's conduct throughout is only consistent with the view that he voluntarily surrendered the office of jailer, and therefore the direction of a verdict for the defendant was proper.

Judgment will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, BOGERT, VREDENBURGH, HEPPENHEIMER, WILLIAMS, JJ. 14.

*For reversal*—None.