THE MECHANICS AND TRADERS BANK OF JERSEY CITY v. BRIDGES AND BOYLE, ASSESSORS, ETC.

ROGERS v. THE SAME.

1. Whether a general law repeals any of the provisions of a special charter, is a question of legislative intention. If the words of repeal are so strong as to admit of no doubt as to the intention to repeal they shall take effect.

2. Under the tax law of 1862, a resident of Jersey City is liable to taxation for stocks in foreign corporations held by him.

3. The tax law of 1862 repeals so much of the charter of Jersey City, passed in 1851, as regulates the things and property made taxable, but does not repeal the mode of levying and collecting the tax by the officers appointed under the charter and its supplements.

On *certiorari*. In matter of taxation.

The assessments in the above stated cases, having been made under the act of March 28th, 1862, entitled "a further supplement to the act entitled an act concerning taxes," and not under the charter of the city and its supplements, were removed into this court, and sought to be set aside, on the ground that they were illegally made, and that the provisions of the charter in regard to matters of taxation, being special and local in their character, were not repealed by the general law of 1862.

For the plaintiffs, *A. O. Zabriskie* and *J. P. Bradley*.

For the defendants, *F. T. Frelinghuysen, Attorney General*.

CHIEF JUSTICE. These assessments have been made by the assessors under the act of March 28th, 1862, and not under the charter of the city and its supplements. *Laws of 1851, 409, act of 24th March, 1862*.

By the 44th section of the charter, the subjects of taxation are declared to be real estate and chattels, at their true, full, fair value; nothing else is taxable.

The taxes are to be assessed by two assessors, chosen by and acting throughout the whole city. They are jointly the assessors of each ward in the city.

By the supplement of March 24th, 1862, there is to be appointed by the common council a collector of revenue, whose duty it is to collect the city, county, and state taxes; the county and state taxes are to be paid over by him to the county collector, in like manner and under like penalties as

township collectors are directed by law to pay. By the act of March 28th, 1862, being the state tax law, the subjects of taxation are entirely different, comprehending a large amount of personal estate not included in the term chattels, particularly specified in the 4th section of the act of 1854, (*Nix. Dig.* 801) from which, however, are to be excluded stocks of domestic corporations. Corporations, also, are to be taxed at the amount of their capital stock and accumulated surplus, after deducting the value of their lands in and out of the state, as in the act prescribed, besides other kinds of taxation not necessary now to be enumerated.

By the act of 1862, two separate sums are directed to be assessed : one, by the first section, of $100,000, which that sections apportions among the counties. The last clause declares that said tax shall be levied and collected in the manner directed by this act, and the act to which this is a supplement, that is the act of 1846. The second section levies a tax of $450,000, the third apportions it among the counties, and the fifth declares that, for the purpose of raising the sums required to be raised by this act, and the sums required to be raised for county, city, township, or other public taxes, the persons and property *herein after* specified shall be assessed and taxed *as herein after provided.* That part of the act touching the mode of assessment is carelessly drawn. It could not have been the intention to assess the $100,000 and the $450,000 in different modes, and yet the first, if a literal construction be adopted, is to be levied according to the act of 1846, while the 5th section directs the sums required to be raised by this act, together with the other taxes, to be raised as in the act provided. This includes the $100,000 as well as the $450,000. If the last section referred to relates to the machinery of taxation, the officers who are to levy and collect the tax, as well as the ratables and principles of taxation, it is inconsistent with the requirements of the first section. If a subsequent section of an act conflicts with a prior, it so far supplants it, because it is the last expression of the legislative will. That the

5th section of the act of 1862 refers to the subjects of taxation cannot be doubted. The words as "herein after provided" are equivalent to "the mode herein after provided." The subsequent part of the act does not provide in detail a complete set of taxing officers and collectors of taxes. But by further defining and declaring the duties of such officers it recognizes them as already provided by law for the discharge of these duties, and in this sense provides a mode of assessment and collection.

But although this view of the case is plausible, and perhaps sound, I am not satisfied to put the decision of this part of the case upon such a critical exposition of the statute, but prefer to rest upon the view presently to be expressed.

It is insisted, by the plaintiffs in *certiorari*, that the charter of the city is not repealed where inconsistent with the provisions of the act, either as to the subjects of taxation or the mode of assessment and collection. The argument is, that the provisions of a special charter of a municipal corporation are not to be repealed by the mere general words of an act inconsistent with its provisions; that the design to interfere with and repeal the chartered right must expressly appear on the face of the act. In the case of *The State* v. *Minturn,* 3 *Zab.* 529, this court held that the repealing clause in the tax law of 1851, repealing all acts and parts of acts inconsistent with its provisions, did not repeal the clause in the charter of a private company exempting it from taxation, although the act declared that all lands within this state, whether owned by individuals or corporations, should be liable to taxation. The land taxed was the road of a railroad company.

The decision was put upon the ground that it could not have been the intention to take away the immunities of a private corporation by such general words.

In *The State* v. *Branin,* 3 *Zab.* 497, it was held that the charters of municipal corporations were delegations of portions of the sovereign power to the body corporate, not to be taken away by mere general words.

In *Gregory's case,* 6 *Co.* 20, it was also held that a particular statute should not be repealed by one that was general. There is no rule of law forbidding the repeal of the provisions of a municipal charter, except by supplement to it.

Whether a general law repeals any of the provisions of a special charter, is a question of legislative intention. If the words of repeal are so strong as to admit of no doubt as to the intention to repeal, they shall take effect. The words of repeal here extend not only to general laws, but to all acts, whether *special* or *local,* or otherwise inconsistent with the provisions of the act. The charter of Jersey City is both special and local, and so far as it is inconsistent with the act is repealed. The act cannot be interpreted so as not to interfere with the provisions of city charters, or upon the idea that it was not intended to do so; for instance, the 22d section expressly regulates the fees of assessors and collectors in assessing and collecting city, ward, borough, county, and state taxes; other sections expressly mention ward officers, and define their duties.

The charter may be inconsistent with the act, either as to the mode in which the tax shall be assessed and collected, that is the mere machinery of taxation, or else in the subjects of taxation and the principle of assessing.

If the taxes are to be levied and collected in cities (Jersey City for example) in the manner described by the act of 1846, as the first section declares, it cannot be done; for the machinery, the officers to do it, as prescribed by that act, do not there exist; there are no assessors and collectors elected for a particular ward. In view of the great practical inconvenience that will follow a contrary decision, nullifying as it will (in all cities and boroughs which have peculiar officers and modes of proceedings) the tax, and rendering its collection impossible, I think we should hold *that* part of the first section of the act to apply only where no other machinery of taxation is provided; that it declares the general mode, in the absence of a particular mode provided for a particular

city. The charter of Jersey City is not in that respect so inconsistent with the act of 1862 as to be repealed by it.

It could never have been the intention of the legislature to substitute for the carefully contrived machinery of taxation, specially provided for the cities of this state, the utterly inapplicable provisions of the act of 1846, framed with a view to the simple wants of the townships into which the agricultural part of the state is divided.

It is very clear, from the whole structure of the act, that its main design was to regulate the subjects and principles of taxation, not the machinery. It is true some of the sections give additional powers to well-known officers to make the discovery of taxable property more thorough. But that does not alter the general character of the act, as above stated. So far as these provisions are applicable to the mode of taxation adopted in cities, they must be used; where they cannot be, for want of officers to which they can apply, the law must cease to operate in that respect.

My conclusion is, that the subjects of taxation and principles of assessment to be used in Jersey City, for their local as well as state taxes, are to be regulated by the act of 1862. As to this, I see no escape from the clear well weighed words of the 5th section of the act, that the taxes for county, city, township, and other public taxes are to be raised on the persons and property, as in the act provided; but that the act did not change the officers constituting the machinery of taxation, as provided for townships by the act of 1846, or by the special charters of cities for them.

I am also of opinion, for the reasons stated in my opinion in the case of the *Newark City Bank* and *Wallen*,* decided at this term, that the Mechanics and Traders Bank is entitled to have the value of its real estate and the stocks of United States and New Jersey, held by it, deducted from the amount of its stock paid in, and that Mr. Rogers is liable to taxation for the stocks in foreign corporations held by him.

As to the main point argued in this case, I am of opinion that the act of March 28th, 1862, repeals so much of the

*Ante, 13.

charter of Jersey City, passed in 1851, as regulates the things and property made taxable, but does not repeal the mode of levying and collecting the tax by the officers appointed under the charter and its supplements.

ELMER, J. The important and difficult question in these cases is, how far the general tax law of 1862 repeals the provisions of the charter of Jersey City. The words of the repealing clause are peculiarly strong, and without doubt were made so for a purpose. They are, "all other acts and parts of acts, whether special or local or otherwise, inconsistent with the provisions of this act, be and the same are hereby repealed."

It is a sound principle of interpretation, always adhered to by this court, that general words of repeal will not be held to affect a special charter. But the power of the legislature to repeal or modify a municipal charter, so far as the questions now involved are concerned, has not been and cannot be disputed. Laws on general subjects, containing words repealing other acts inconsistent therewith, such words being in fact almost always mere surplusage, are seldom intended to affect special provisions on kindred subjects contained in charters; but when words of a specific nature and application are used, it becomes the question what such words mean, or in other words, what was the intention of the legislature; for that being ascertained, we have no choice but to give it effect.

The charter of Jersey City, Acts of 1851, 409, contains special provisions, that after deducting the poll-tax of two dollars, appropriated to public schools, the residue of the tax to be raised shall be assessed on the value of the real estate and chattels situate in the city, both of residents and non-residents.

These provisions are inconsistent with the 5th and subsequent sections of the act of 1862. They are parts of a special and local act, and are therefore in terms repealed. I cannot escape the conclusion that the new act meant to re-

quire, and does require, the money " to be raised for county, city, township, or other public taxes," in all parts of the state, to be assessed upon real and personal property, as therein prescribed, in a uniform manner, and meant to repeal all special charters, so far as their provisions are inconsistent with that object. Could we see that manifest injustice would result from such a construction of the special words, I should hesitate to adopt it. But no injustice can be fairly predicated of a system of taxation bearing equally on all parts of the state, nor can I perceive that even material inconvenience must be the result. It is indeed highly probable that the mode of taxation prescribed in the charter of Jersey City is wiser and better than that prescribed by the new act, but this is a consideration which belongs exclusively to the legislature.

Much stress was laid by counsel on the great difficulty, if not impossibility, of assessing and collecting the taxes in Jersey City, and in many other parts of the state, if the local laws directing the time and manner of doing so are held to be repealed. The local acts, however, except perhaps in a few unimportant particulars, are not, as to these matters, inconsistent with this act of 1862. The repeal cannot be considered as extending to anything not plainly inconsistent. The closing words of the first section, which direct the tax therein mentioned to be levied and collected in the manner directed by this act and the act to which this is a supplement, would seem to exclude the modes of proceeding provided for in other acts. But the 5th section directs that all the sums required to be raised by the act, which of course include the particular sum mentioned in the first section, shall be assessed and taxed as therein after specified. The meaning of this last provision would seem to be, that the taxes are to be assessed and collected as by this act directed, so far as the direction extends, but in all other particulars the assessment and collection are to be in pursuance of the general or local laws before in force. If these two sections are in conflict, the last section must prevail.

The local laws therefore not plainly inconsistent with some

explicit provision of the act of 1862, are left in force, and govern the time and mode of assessing and collecting.

VREDENBURGH, J., concurred.

VAN DYKE, J., dissented.

Assessment confirmed.

CITED in *State* v. *Miller*, *post* 371; *State, Taintor, pros.*, v. *Mayor and Council of Morristown*, 4 *Vroom* 61; *State, Gorum, pros.*, v. *Mills, Receiver*, 5 *Vroom* 180; *State* v. *Commr's of R. R. Taxation*, 8 *Vroom* 230; *Trustees of Public Schools* v. *City of Trenton*, 3 *Stew.* 677.