THE STATE, THE MORRIS AND ESSEX RAILROAD COMPANY, PROSECUTORS, v. COMMISSIONER OF RAILROAD TAXATION.

1. If the prior clauses of a general law apply in express terms to a special corporation, a general repealer necessarily repeals inconsistent provisions in the special charter, but if there is an absence of such express prior reference, there must be a special repealing clause to make a general law applicable to such particular corporation.

2. The act of 1873, (*Laws*, 1873, *p.* 112,) applies by clear expression to the Morris and Essex Railroad, and therefore, the general repealer extinguishes all the provisions in the charter of said company inconsistent with the act.

3. The tenth section applies only to railroad companies having irrepealable charters.

4. As applied to corporations, every grant of franchises is a charter, and therefore, the sixth section of the general corporation act of 1846 must be considered as incorporated in the act of 1865, (*Laws*, 1865, *p.* 556,) by which it is made, in express terms, subject to alteration or repeal.

# JUNE TERM, 1875. 473

State, Morris and Essex R. R. Co., pros., v. Comm'r of Railroad Taxation.

5. The Morris and Essex Railroad has not an irrepealable contract with the state, and is, therefore, subject to taxation, under the act of 1873, without its consent.

In error to the Supreme Court.

For former proceedings in this case, see 8 *Vroom* 228.

For the plaintiff in error, *J. G. Shipman.*

For the defendant in error, *Gilchrist.*

The opinion of the court was delivered by

VAN SYCKEL, J. In *McGavisk* v. *The State, Morris and Essex R. R. Co., pros.,* 5 *Vroom* 509, this court held, that the supplement to the charter of the Morris and Essex Railroad, passed March 23d, 1865, p. 556, repealed the general tax law of 1862 *pro tanto,* and established the only form of assessment for taxes that could be made against the company. By the third section of the latter act, the company is subjected to the payment of a tax of one-half of one per cent. on the cost of their road, in lieu of all other imposition.

An act of the legislature, approved April 2d, 1873, p. 112, provided a new mode for the taxation of railroad companies, under which proceedings were taken to assess said company. These proceedings were affirmed by the Supreme Court, and are now in this court for review.

The act of 1873 is entitled "an act to establish just rules for the taxation of railroad corporations, and to induce their acceptance and uniform adoption." Its preamble recites that, "Whereas, for the encouragement of railroad enterprise, laws creating and regulating railways in this state usually provide for the payment by them, in consideration of their chartered privileges, of a fixed rate upon their capital stock or the cost of their works, in lieu of all other public impositions whatever; and whereas, it is, nevertheless, contended, that the property of such corporations being largely acquired for, or through the growth and extension of their prosperity, should contribute

to the charges and expenses essential for municipal and county purposes; and whereas, it is desirable, in order to the avoidance of litigation and future dissatisfaction, that such municipal and county taxation shall be authorized, and that the same shall be permanently fixed and regulated; now, therefore—

"1. Be it enacted, That all taxation upon all railroad companies occupying and using railroads in this state, whether as lessees or otherwise, shall hereafter be made as follows:

"*First*—Such companies shall pay upon the cost, equipment and appendages of said railroads, respectively, a state tax, after such rate of taxation as may have been heretofore fixed by law upon such companies, or in default thereof, after the rate of one-half of one per centum upon such cost.

"*Second*—Upon all the real property by them as aforesaid occupied, used or owned, for the purposes of their road or otherwise, excepting their main stem or road-bed and track, not exceeding one hundred feet in width, such companies shall pay a county and municipal tax, for the benefit of the counties, townships and cities, respectively, where the same is situate, after the rate of one per centum upon a valuation thereof, and of all improvements thereon not by way of repairs, now or hereafter to be made, which valuation shall be made as hereinafter stated; provided, however, that at the termini of their said roads, each company may hold a tract of land, not exceeding ten acres, to be in one parcel, which, with the buildings and improvements thereon, shall be free from the payment of county, township and municipal taxes whatsoever."

The eleventh section of this act declares that all acts and parts of acts inconsistent therewith are repealed.

In the first place, it is insisted, on behalf of the company, that this section does not repeal the third section of the act of 1865, and the following cases are relied upon to sustain that proposition: *State* v. *Minton*, 3 *Zab.* 529; *State* v. *Miller*, 1 *Vroom* 368; *Same Case*, 2 *Ib.* 521.

In the *State* v. *Minton,* it was held that the Morris and Essex Railroad Company was not affected by the general tax law of 1851, which declared that all lands should be liable to taxation thereby, and repealed all acts and parts of acts inconsistent with its provisions. The well settled law in this state is, that the provisions of a special charter shall not be altered or repealed, except by express words. Therefore, although in the general tax law of 1851, the words "all lands" were used, they were held not to include the lands of this company, because, it must be presumed, in the absence of clear expression to the contrary, that the legislature passed the general law with reference only to those to whom the general tax law before then was applicable, and not for the purpose of affecting corporations that had in their charters a specific provision for taxation. There was nothing in the general tax law of 1851, thus construed, inconsistent with the charter of the company, which could be operated upon by the general repealer.

But, if the general law of 1851 had enacted that all the lands of every railroad corporation in this state, without exception, should be liable to taxation under its provisions, it would have applied, necessarily, to the Morris and Essex Railroad, and the general repealer would have swept away any inconsistent provision in its charter.

A general repealer in a general tax law cannot disturb the provisions of a special charter, because they are wholly different; they are not inconsistent—they may both stand independent of each other. They become inconsistent when the general law, by clear expression, is made to embrace, and is applied to the particular corporation, and its inconsistent provisions are then brought within the reach of a general repealer.

There is nothing in the cases in 1 *Vroom* 113 and 369, which is not in harmony with this doctrine. If the prior clauses of a general law apply in express terms to a special corporation, a general repealer would necessarily repeal inconsistent provisions in the special charter, but if there is an

absence of such express prior reference, there must be a special repealing clause to make a general law applicable to such particular corporation.

The question is, whether the act of 1873 applies, in clear language, to this corporate body ; and if so, the general repealing clause obliterates any inconsistent provision in the special charter.

The act, by its title, relates exclusively to railroad companies, and by its first section enacts that "all taxation upon all railroad companies occupying and using railroads in this state, whether as lessees or otherwise, shall be assessed thereunder."

Language cannot be clearer ; every railroad in the state is included, and if any road to which the legislature has power to apply this law can claim that it is not within it, every other road can set up the same exemption, and thus render the law wholly inoperative.

For the purposes of the case now under discussion, this act must be read as if the legislature had expressly said that the Morris and Essex Railroad shall be taxed as in this act is directed.

A new mode of taxation being thereby provided for this company, in the language of the court in *McGavisk* v. *The State :* "Two methods of taxation, for the same general purpose, must certainly be repugnant. Both cannot be used without confusion, oppression, and double taxation ; nor can the option to use either be left at the discretion of any public officer. Such extraordinary power could only be conferred by express terms, most clearly stated. No such construction can be given to this law by implication. Either the one law or the other must prescribe the only rule for the assessment of taxes against this company ; and because of the manifest repugnancy, the later special law must prevail."

This construction will effectuate the clearly expressed intent of the legislature to prescribe a uniform rule for imposing taxation upon the entire class of tax payers embraced by its enacting clauses.

It is further argued that the preamble to the tenth section of the act of 1873 excludes from its operation all railroad companies having special provisions in their charters for taxation, whether such provisions are repealable or irrepealable, unless the company shall file its acceptance in writing of this enactment.

The tenth section is in these words : " And whereas, certain railroad corporations owning or occupying railroads in this state claim exemption from all taxation, whether state, county, or municipal, further than is provided by their charters, or by special laws for their benefit now existing, which claims, if legal, subject such corporations to public ill will, and make it their interest to forego the same, and agree to the scheme of taxation hereby established ; now, therefore, be it enacted, that any such railroad corporation may, within six months from the approval of this act, make and execute, under their common seal and signature of their president, and file in the office of the secretary of state, a declaration in writing, surrendering all claim to exemption from taxation by them heretofore had or made, and accepting the provisions of this act in lieu thereof."

This statute must be interpreted so as to harmonize all its provisions, and give effect to every part of it.

The intention expressed in the first section, to subject every railroad to the proposed scheme of taxation is so clearly declared, that there can be no doubt about it. The difficulty presented to the mind of the law-maker was, that there was a class of corporations, whose submission to the legislative will could not be made compulsory by reason of irrepealable contracts in their charters. With the purpose so clearly avowed, to frame the law for all railroads, it must be presumed that the legislature intended, by the tenth section, to remove the obstacle by obtaining the consent of these corporate bodies to the abrogation of their special exempting clauses, and thereby to give the first section full force, and not to render it nugatory by making its efficacy to depend upon the will of those, whose assent was not necessary, to give it the

sanction of a law. The railroads within the enacting clause of the tenth section are those " that claim exemption from *all taxation*, whether state, county or municipal, further than is provided for by their charters, or by special laws for their benefit now existing."

Corporations having repealable charters have never claimed, or even pretended, that they were exempt from all taxation except that specified in their charters. They claim exemption only from all taxation by the general tax laws; that they have entire immunity from additional burdens until the legislature, by express enactment, shall change the mode in which they are to be assessed.

The claim of exemption from all taxation further than that provided for by their charters, by companies having repealable charters would involve the inconsistency of denying the repealability of charters, which are conceded to be repealable.

There are no railroad companies except those having irrepealable charters which can claim exemption from all taxation, by either general or special laws, further than is provided by their charters.

To this class of corporations only can the tenth section be applied, and provision is therein made for extinguishing these special laws, so that the uniformity which the act has in view may be secured.

The judgment below must, therefore, be affirmed, unless the prosecutors can be classified with those corporations that have irrepealable charters.

In their original charter (*Acts*, 1835, *p*. 25,) the legislature expressly reserved the power to alter, amend or repeal at pleasure, and by the supplement of 1836, p. 223, the same right was preserved.

In 1862 the legislature passed a general tax law, which in *The State* v. *Miller*, 1 *Vroom* 368, was held to include the prosecutors by clear expression in its provisions, and thereby to repeal the special mode of taxation to which it was before subject. It is now argued that the legislature having once exercised its power of repeal, has exhausted it. The force of

this argument is not apparent. The right of repeal placed the prosecutors in the same position that all other tax payers occupied ; it was a right to alter, modify or repeal, not once, but so often as the legislative will is expressed to that end. There is no analogy between legislative power and powers granted by deed or will. The latter, when fully executed, became extinguished, while the former is not, in the least, impaired or diminished by its exercise.

But, upon this branch of the case, the prosecutors rely mainly upon the supplement of March 23d, 1865, pp. 556, 961.

The third section of this supplement provides, that the tax of one-half of one per cent. to be paid according to the terms of the original act of incorporation, shall be payable at the expiration of one year from the time the road shall be open and in use to Phillipsburg, and annually thereafter, and shall be in lieu of all other taxation ; and it was provided that this section should not go into operation without the written consent of the said company.

This consent, which was afterwards duly filed, it is now urged, created an irrepealable contract with the state. Irrepealable grants are in derogation of the sovereign power of legislation, and cannot, in any case, arise by intendment.

It will not be understood that the legislature has relinquished or surrendered any part of its power, unless the intention to do so is expressed in language which leaves it free from doubt.

The act of 1865 conferred a privilege upon the prosecutors, giving them the option of electing which of two specified modes of taxation they would submit to, without containing any expression which can give countenance to the claim that the supplement is to have any higher quality than the repealable charter of which it became a part. There is nothing indicating an intention to make the provision more permanent than that contained in the original grant. No inference of that kind can be drawn from the language, that such tax " shall be in lieu and satisfaction of all other taxation or im-

position whatsoever, by or under the authority of this state, or any law thereof," for the same provision in substance is found in the charter of 1835.

If there could be any doubt that the supplement must partake of the character of the repealable charter of which it is a part, I agree, for the reasons stated in the opinion of Justice Depue in the Supreme Court, that as applied to corporations, every grant of franchises is a charter, and that the sixth section of the general corporation act of 1846 must be considered as incorporated in the act of 1865, by which it is made, in express terms, subject to alteration or repeal.

The prosecutors are subject to be taxed by virtue of the first section of the act of 1873, and the judgment of the court below should, therefore, be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, DIXON, REED, SCUDDER, VAN SYCKEL, WOODHULL, GREEN, WALES—9.

*For reversal*—None.