HUGH M. GILLSON, *ET AL.*, PLAINTIFFS-RESPONDENTS, v. ROGER L. HEFFERNAN, DEFENDANT-APPELLANT, AND DAVID DOWD, SUNAO J. IWATSU AND HENRY TOTH, INTERVENERS-APPELLANTS.

Argued March 19, 1963—Decided July 1, 1963.

370

*Mr. Nelson G. Gross* argued the cause for defendant-appellant and for interveners-appellants (*Messrs. Gross and Gross,* attorneys; *Mr. Nelson G. Gross,* of counsel).

*Mr. Martin T. Durkin* argued the cause for plaintiffs-respondents.

The opinion of the court was delivered by

SCHETTINO, J. We certified on our own motion this appeal to the Appellate Division from a declaratory judgment of the Superior Court, Law Division, determining as of January 1, 1962, the Class IV membership of the Planning Board of the Borough of Bergenfield and the expiration dates of the terms of the offices.

Bergenfield is governed by a mayor and common council. Plaintiffs are the mayor, four of his appointees to the planning board (Oxman, Kameny, Mendelson and Callahan), and a taxpayer (Brennan). They instituted this action in lieu of prerogative writs in the nature of *quo warranto* and for a declaratory judgment on January 8, 1962, and sought a determination that the four appointees were entitled to board membership by virtue of their appointments on January 1, 1962, and that defendant Heffernan, who claimed that he was entitled to hold one of these offices until December 31, 1963, was not a board member because either he never legally qualified for the office to which he was appointed on January 1, 1958, due to his failure to take, subscribe and file his oath of office, or his appointment for a term of four years expired on December 31, 1961. Defendant denied the former charge, and by way of an affirmative defense to the latter, he asserted that

although his appointment was for four years, he was entitled to a full statutory six-year term. In reply, plaintiffs alleged that, assuming Heffernan was entitled to remain in office until the end of 1963, he resigned his office early in January 1962.

Two other board members, Iwatsu and Toth, and one former member, Dowd, made application for and were granted permission to intervene. They sought a judgment declaring that Iwatsu and Toth, appointed in 1959 by a former mayor purportedly to full terms of four years, were entitled to full statutory six-year terms, and that Dowd, removed from office by the plaintiff mayor on January 1, 1962, on the ground that Dowd's reappointment in 1961 by the council was improper, was also entitled to a full statutory six-year term, dating from the time of his appointment in 1957 by the former mayor.

The trial court found that plaintiffs failed to establish that Heffernan never qualified for office or that he resigned and dismissed their action in lieu of prerogative writs. With reference to the action for a declaratory judgment, the court held that Oxman, Kameny, Mendelson and Callahan were properly appointed on January 1, 1962, and taking January 1, 1955, as the beginning date of the terms of all Class IV members, it determined that Oxman received a six-year term and that Kameny, Mendelson and Callahan received the unexpired five, four and three years, respectively, of six-year terms. The court also determined that Iwatsu, appointed on January 1, 1959, purportedly for a full term of four years, received the unexpired five years of a six-year term, and that Toth, appointed at the same time and for a like term, received the unexpired four years of a six-year term. Heffernan and Dowd were held to be no longer members: Heffernan, because his 1958 appointment purportedly to a full term of four years should have been for the unexpired four years of a six-year term ending on December 31, 1961; and Dowd, because his 1957 appointment purportedly to a full term of four years should have been for the unexpired four years of a six-year

term ending on December 31, 1960, and his reappointment by the council in 1961 was improper.

Defendant and the interveners appealed. Plaintiffs did not cross-appeal from the dismissal of their action in the nature of *quo warranto*.

Two other appointees of the council, Sirubi and Campeau, made application to the Appellate Division for an order granting them permission to join in the appeal as intervening parties or as *amici curiae*. Their application was denied and, counsel informs us, they instituted an action in the Superior Court, Law Division, to have their asserted right to membership on the board determined. As far as we know, this case is still pending in that court.

Bergenfield passed an ordinance in 1932 establishing a planning board of seven members under the provisions of *R. S.* 40 :55–1 *et seq.*, since repealed. Section 3 of that act authorized the governing body of a municipality to create by ordinance a planning board of between five and nine members. Membership was to be made up of four classes, with Classes I, II and III having one member each. Thus, Class IV of the Bergenfield board consisted of four members.

This section provided for a staggered system of appointments to Class IV : "The term of one member of Class IV first appointed shall expire at the end of each year beginning at the end of the first year. Thereafter the term of each shall be the same number of years as there are members of class IV on the board." It also provided that if a vacancy occurred in any class other than by expiration of the term, it was to be filled only for the unexpired term. No provision was made for holdover membership.

All parties agree that the appointments made from the inception of the planning board in 1932 through 1948 were proper and we assume that, after the first staggered appointments, each was for four years. Then, on February 14, 1949, the 1932 ordinance was amended increasing the membership of Class IV to six. Under section 3 of the statute each member of Class IV thereafter should have been appointed for six

years. Nevertheless, each member continued to be appointed for a term of four years.

In 1953 the Legislature enacted the Municipal Planning Act, *N. J. S. A.* 40:55–1.1 *et seq.*, and repealed *R. S.* 40:55–1 to 40:55–21. *N. J. S. A.* 40:55–1.4 retained the identical language of *R. S.* 40:55–3 with respect to the stagger system of appointments to Class IV membership and the filling of vacancies. Like its predecessor, however, no provision was made for holdover membership. Planning boards created prior to the adoption of the 1953 act were continued by that act, and the members appointed thereto were to hold office until the end of their terms, unless sooner terminated. *N. J. S. A.* 40:55–1.27. And all rules and regulations adopted by those planning boards regulating the subdivision of lands were to continue in effect until July 1, 1954, unless prior to that time the municipal governing body adopted an ordinance pursuant to the new statute for the regulation of subdivisions. *N. J. S. A.* 40:55–1.27.

On June 22, 1954 the governing body of Bergenfield introduced Ordinance No. 644 for the creation of a planning board, providing for the appointment of members thereto and setting forth their duties in accordance with the 1953 statute. The ordinance was adopted on July 6, 1954. Section 3 of the ordinance provided that the planning board should have six Class IV members, with the respective terms of the members first appointed being for one, two, three, four, five and six years, and that thereafter the term of each should be the same number of years as there are members of Class IV; section 4, that the personnel of the then existing board were to continue in office until the completion of their respective terms, unless sooner terminated; and section 9, that all prior ordinances or parts thereof inconsistent with the 1954 ordinance were repealed.

 In determining the composition of Class IV membership as of January 1, 1962, the trial court concluded that "the commencement date of the terms of *all* Class IV members was January 1 of 1955, the date of the first appointment,

since neither the statute nor the ordinance fixes the commencement of the term * * *." We disagree. The court should have used January 1, 1949, as a starting point, before the February 14, 1949 amendment, when the appointments were for the correct number of years, *i. e.*, for four-year terms.

We are informed that, as of January 1, 1949, the Class IV members and their terms were:

COWELL: appointed on January 1, 1949, to succeed Moss, who had been appointed on January 1, 1946, for a four-year term ending December 31, 1949, but had resigned in 1948. Hence this appointment was for the one-year unexpired part of Moss' four-year term.

DEER: appointed on January 1, 1947, for a four-year term ending December 31, 1950.

BROWN: appointed on January 1, 1948, for a four-year term ending December 31, 1951.

JONES: appointed on January 1, 1949, for a four-year term ending December 31, 1952.

Upon the expiration of these terms, each member or his successor should have been appointed for a six-year term because the earliest expiration date would follow the February amendment increasing the planning board to six. Appointments for less than the full legal term, as was the case here, could not give the term a different duration. *Newman v. Borough of Fair Lawn,* 31 *N. J.* 279, 288 (1960).

Thus, if on January 1, 1950, Cowell or his successor received a four-year appointment, served four years and then was reappointed for four years, he served as a *de jure* officer for a six-year term, and because he was not reappointed at the end of six years and the statute authorized no holdover membership, he served as a *de facto* officer thereafter. 43 *Am. Jur. Public Officers* § 484 (1942). If someone other than Cowell or his successor was appointed for a four-year term at the end of the first four years of the six-year term commencing January 1950, he served as a *de jure* officer merely for the unexpired term, *Monte v. Milat,* 17 *N. J. Super.* 260, 268 (*Law Div.* 1952), and as a holdover *de facto*

officer thereafter. One holding over, of course, shortens the term of his successor. *Monte, supra.* As far as the office originally held by Cowell is concerned then, January 1, 1950, and every sixth January 1 thereafter are critical in determining at any given time whether the appointee received a full six-year term or an unexpired portion thereof, and whether he was or is serving as a *de jure* or *de facto* officer. The other three positions can be determined in the same manner, except that the critical dates will be January 1, 1951, 1952 and 1953, respectively, and every sixth January 1 thereafter.

On January 1, 1949 Laffler and Gormley were appointed for two and three-year terms, respectively, as the fifth and sixth members of the board, although Class IV membership was not increased until February 14. At least as of the latter date, Laffler and Gormley held the fifth and sixth offices on the board as *de facto* officers. See *Beattie v. Passaic County Bd. of Taxation,* 96 *N. J. L.* 72 (*Sup. Ct.* 1921). The statutory scheme required that, upon expansion of that class from four to six members, the initial terms of the fifth and sixth offices should have been five and six years, respectively, with six-year terms thereafter. However, not only were the original terms of a different and shorter duration, but subsequent appointments to those offices were for four years, instead of six. Thus, any appointment to the fifth office prior to December 31, 1953, and to the sixth office prior to December 31, 1954, expired on those dates, and any appointment thereafter had to be for a six-year term or an unexpired portion thereof. As far as these two offices are concerned then, January 1, 1954, and January 1, 1955, and every sixth January 1 thereafter are significant in determining the composition of Class IV membership on any given date.

As for the effect of the 1954 ordinance, section 3, providing for staggered terms for appointees beginning with a one-year term and ending with a six-year term, has to be considered together with section 4 of the ordinance, which continues to their expiration the terms of the members then

sitting on the board, as well as with the statutory scheme of *N. J. S. A.* 40:55–1.4, and its predecessor, *R. S.* 40:55–3.

The basic plan of the Legislature was that one six-year term (assuming Class IV consists of six members) would end each consecutive year, after the initial appointments under the stagger system expired. Our approach to the problem before us is consistent with this plan. Assuming that the same board members continued in office, the correct terms of their next two reappointments would have been as follows:

| | *First Six Year Appointment* | *Second Six Year Appointment* |
|---|---|---|
| Cowell | Jan. 1, 1950 through Dec. 31, 1955 | Jan. 1, 1956 through Dec. 31, 1961 |
| Deer | Jan. 1, 1951 through Dec. 31, 1956 | Jan. 1, 1957 through Dec. 31, 1962 |
| Brown | Jan. 1, 1952 through Dec. 31, 1957 | Jan. 1, 1958 through Dec. 31, 1963 |
| Jones | Jan. 1, 1953 through Dec. 31, 1958 | Jan. 1, 1959 through Dec. 31, 1964 |
| Laffler | Jan. 1, 1954 through Dec. 31, 1959 | Jan. 1, 1960 through Dec. 31, 1965 |
| Gormley | Jan. 1, 1955 through Dec. 31, 1960 | Jan. 1, 1961 through Dec. 31, 1966 |

Thus, when the 1954 ordinance was adopted, the terms of the members, if they had been correctly appointed, would have ended in orderly rotation each year, consistent with the basic plan of sections 3 and 4 of the ordinance and of *N. J. S. A.* 40:55–1.4.

We know from the record that all six members did not continue in office and that substitutes and successors were named over the years. But the record is not clear with respect to the dates of subsequent appointments, and because much information obtained by this court at or after oral argument was never part of the trial record, we are remanding the cause for a determination not inconsistent with the above outline.

Defendant and the three interveners have raised other issues

regarding the manner of appointment. They argue that appointments by the mayor to the planning board are subject to council confirmation, that appointments attributed to the council were in fact made by the mayor as he engaged in and directed the manner of selecting the appointees, and that in any event the mayor is estopped from questioning the validity of these appointments.

The statute is quite clear; Class IV consists of "other citizens of the municipality to be appointed by the mayor." *N. J. S. A.* 40:55–1.4. We reject the suggestion that *R. S.* 40:87–16, which requires that borough appointments by the mayor be made with the advice and consent of the council, limits the authority of the mayor under *N. J. S. A.* 40:55–1.4. Had the Legislature so intended, it would have said so in express terms. See *City of Clifton v. Zweir,* 36 *N. J.* 309, 325–26 (1962).

The minutes of several meetings of the mayor and council indicate that the mayor, believing his appointments to the board were subject to council approval, submitted his nominations to that body and all were rejected. Then, in a "spirit of cooperation," he asked the council to make its own nominations. It nominated Dowd and on roll call his appointment was approved. This was not an appointment by the mayor within the meaning of *N. J. S. A.* 40:55–1.4, and he could not delegate away the authority given him by the Legislature in that statute. See *Daly v. City of New Brunswick,* 3 *N. J.* 397, 401 (1950); 67 *C. J. S. Officers,* § 104 (1950).

With reference to estoppel, first raised on appeal, planning board appointments must be made pursuant to the mandate of the statute. The Legislature has set forth the procedure to be followed and noncompliance with the legislative will cannot be condoned, let alone be encouraged. The actions of the mayor, if done with full knowledge of the facts and the law, cannot put beyond challenge even by him an appointment made in direct violation of a mandatory statute. *Cf. Daly, supra.* And certainly, the other five plaintiffs were

not estopped to question the right of Heffernan or Dowd to hold office.

Apparently the action instituted by Sirubi and Campeau raises some of the same issues considered here with respect to council appointments. We direct that upon remand that case be consolidated with this one.

Reversed and remanded. No costs.

*For reversal and remandment*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.