245 N.J. Super. 290 (1991)
585 A.2d 414
HELEN MILLER, EARL B. ROBINSON, FRANCIS M. MEEKS, III, PLAINTIFFS-RESPONDENTS,
v.
HAROLD MITCHELL, MAYOR, CITY OF PLAINFIELD, DEFENDANT-APPELLANT, AND CITY OF PLAINFIELD PLANNING BOARD, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued December 5, 1990.
Decided January 15, 1991.
*291 Before Judges KING, LONG and STERN.
Michele R. Donato argued the cause for appellant.
Eric Martin Bernstein argued the cause for respondents.
The opinion of the court was delivered by STERN, J.A.D.
*292 This appeal requires us to resolve a conflict between the provisions of a municipal charter, enacted as special legislation pursuant to N.J.S.A. Const. (1947), Art. IV, § 7, par. 10, and the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -129. The specific conflict concerns whether the defendant, Mayor of the City of Plainfield, can appoint Class IV members of the Plainfield Planning Board without the advice and consent of the Plainfield City Council. In the Law Division, Judge Alexander Menza concluded that the provisions of the charter controlled in these circumstances. We agree and affirm.
The City of Plainfield in Union County, "though distinctly urban is still primarily residential" and has a population of approximately 45,500. Westergaard, New Jersey  A Guide to the State, Rutgers University Press (1987) at 283. Pursuant to the provisions of N.J.S.A. Const. (1947), Art IV, § 7, par. 10, and its implementing legislation, N.J.S.A. 1:6-10 to -20, the governing body of the City petitioned the Legislature for the passage of a proposed charter as special legislation. In July, 1968 the petition was approved by more than two-thirds of each house of the Legislature. The petition was also approved by "the legal voters" of the municipality. See N.J.S.A. 1:6-16 to -18. The Charter took effect on January 1, 1969.
According to Pane, 34 N.J.Practice, Local Government Law, § 115 at 70 (1987):
A handful of municipalities still are organized, at least in part, on the basis of old special charters granted specifically to them by the Legislature prior to the 1875 constitutional amendment requiring a general law approach to local government legislation. In many cases, the original provisions of the special charters have been modified by subsequent amendments or by general law. Five places are known to be involved  Egg Harbor City, Beverly, Burlington City, Woodbury, and Salem  including 0.5% of the State's estimated 1982 population as of January 1, 1984.
In addition, since the State revised its constitution in 1947, it has been possible again for individual communities to obtain a unique form of government through the enactment of a law providing them with their own special charter. Although slow to gain attention, this new special charter approach has become increasingly popular in recent years, with 10 places, as of January 1, *293 1984, having special charters enacted since 1947. Collectively, they include another 3.7% of New Jersey's estimated 1982 population.
The constitutional provision governing enactment of special municipal charters, N.J.S.A. Const. (1947), Art. IV, § 7, par. 10, provides:
Private, special or local laws; municipalities and counties
Upon petition by the governing body of any municipal corporation formed for local government, or of any county, and by vote of two-thirds of all the members of each house, the Legislature may pass private, special or local laws regulating the internal affairs of the municipality or county. The petition shall be authorized in a manner to be prescribed by general law and shall specify the general nature of the law sought to be passed. Such law shall become operative only if it is adopted by ordinance of the governing body of the municipality or county or by vote of the legally qualified voters thereof. The Legislature shall prescribe in such law or by general law the method of adopting such law, and the manner in which the ordinance of adoption may be enacted or the vote taken, as the case may be.
The Charter establishes a Mayor-Council-Administrator form of government.[1] It provides in § 3.5(a) that non-elected municipal officials are generally to be appointed by the Mayor with the advice and consent of the Council.[2] Section 4.8 specifically provides:
Whenever any statute applicable to the city authorizes the appointment of the members of any board, commission, authority or other body for municipal purposes within the city, except for the board of education, the power of appointment, notwithstanding any provision to the contrary in any such statute, shall be exercised by the mayor with the advice and consent of the council.
The present dispute arose when the present Mayor, after assuming office in January, 1990, sought to appoint two Class IV Planning Board members, a replacement for a third member and two alternate members, without the advice and consent of the Council. Counsel for the Planning Board rendered an *294 opinion agreeing with the Mayor's position that the MLUL did not require such consent and that the MLUL controlled.[3] Subsequently, plaintiffs, three members of the City Council, filed a verified complaint in lieu of prerogative writs challenging the appointments in the absence of the Council's advice and consent. Judge Menza concluded that the Legislature did not intend to amend the Charter by its subsequent adoption of the MLUL and that the Charter's requirement for advice and consent by the Council controlled. The resulting final judgment enjoined the Mayor from appointing Class IV and alternate members without the advice and consent of the Council and invalidated the three Class IV members and two alternates appointed by the Mayor.

I.
The Mayor contends before us that the Charter's provisions concerning appointments cannot apply to Planning Board members and that any such application would render the provisions unconstitutional. This argument is premised upon the assertion that N.J.S.A. Const. (1947), Art IV, § 6, par. 2 permits only the Legislature to enact laws regarding appointment of Planning Board members, and apparently only by general laws which would render unconstitutional the provisions of a special charter, even though approved by the Legislature, with respect to such appointments.
This constitutional provision was originally adopted effective October 18, 1927 as an amendment to the 1844 Constitution. *295 See "Historical Note" to Art. IV, § 6, par. 2 in New Jersey Statutes Annotated (1971 ed. at 83). See also Fischer v. Bedminster Tp., 11 N.J. 194, 201, 93 A.2d 378 (1952); Schmidt v. Board of Adjustment, Newark, 9 N.J. 405, 413-417, 88 A.2d 607 (1952). It was needed in order to authorize legislation governing land use and zoning, following the United States Supreme Court's decision in Euclid v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926), because the New Jersey Courts had previously held such legislation unconstitutional. See H. Krumgold & Sons v. Mayor & Aldermen of Jersey City, 102 N.J.L. 170, 130 A. 635 (E. & A. 1925); Ignaciunas v. Risley, 98 N.J.L. 712, 715-717, 121 A. 783 (Sup.Ct. 1923), aff'd, sub nom. State v. Nutley, 99 N.J.L. 389, 125 A. 121 (E. & A. 1924). See also Schmidt v. Board of Adjustment, Newark, supra, 9 N.J. at 414-417, 88 A.2d 607. The amendment therefore authorized such legislation as a matter of state law, since the federal constitution was held not to prohibit it. Thus, N.J.S.A. Const. (1947) Art. IV, § 6, par. 2 was never intended to address this issue or to limit municipal power otherwise authorized by a special charter, and we need not consider any question concerning possible inconsistency between its provisions and those of N.J.S.A. Const. (1947) Art. IV, § 7, par. 10.

II.
The Mayor also contends that municipal ordinances must be authorized and consistent with State law and that municipalities have no power to enact zoning or planning ordinances except as authorized by the Legislature. We agree with the general proposition. See e.g., New Jersey Builders Ass'n v. Mayor and Tp. Committee of Bernards Twp., 108 N.J. 223, 233-38, 528 A.2d 555 (1987); Taxpayers Ass'n of Weymouth Tp. v. Weymouth Tp., 80 N.J. 6, 20, 364 A.2d 1016 (1976) cert. den. 430 U.S. 977, 97 S.Ct. 1672, 52 L.Ed.2d 373 (1977); Fischer v. Bedminster Tp., supra, 11 N.J. at 201, 93 A.2d 378. However, those principles do not require us to void the challenged provisions of the Plainfield Charter which was itself approved, *296 pursuant to the Constitution, by two-thirds of each house of the Legislature.

III.
The Mayor further contends that, irrespective of the original validity of the appointment process embodied in the Charter, the MLUL rendered the Charter's provisions inconsistent with the controlling law of the State. There is no dispute raised as to the power of the Legislature to repeal provisions of the Charter. The issues before us relate to the process by which the Legislature may repeal and whether the MLUL reflects an intent to repeal the appointment process in these circumstances.

A.
Generally, it is well established "that a special law will not be repealed by a general statute unless the general statute contains express words of repealer, or unless the purpose to repeal appears in the statute by necessary implication." Trenton Savings Fund Society v. Wythman, 106 N.J. Eq. 93, 95, 148 A. 622 (E. & A. 1929). Thus, as with any special legislation, there must be a clear legislative intent evidenced by express language or by enactment of clear policy embodying unmistakable or necessary implication to repeal inconsistent provisions of a special municipal charter. See e.g., State, Morris & Essex Railroad Co. v. Commissioner of Railroad Taxation, 38 N.J.L. 472, 475 (E. & A. 1875); State v. Mills, 34 N.J.L. 177, 180 (Sup.Ct. 1870); Mechanics & Traders Bank v. Bridges and Boyle, 30 N.J.L. 112, 116 (Sup.Ct. 1862) ("[w]hether a general law repeals any of the provisions of a special charter, is a question of legislative intention. If the words of repeal are so strong as to admit of no doubt as to the intention to repeal, *297 they shall take effect.")[4]See also 2 McQuillin, Municipal Corporations §§ 40.02-40.09 at 186-251 (4th ed. 1986); 6 McQuillin, Municipal Corporations, § 21.37 at 356-357 (3d ed. 1988) ("... a general act usually does not by implication repeal a special act unless it does so expressly or the acts are so utterly repugnant that they cannot stand together or the legislative intention to repeal the special act is otherwise clearly manifested. Mere conflict does not suffice to repeal the special act, since ordinarily the special act is regarded as only an exception to the general act.") Thus,
[t]he enactment of a general law broad enough in its scope and application to cover the field of operation of a special or local statute will generally not repeal a statute which limits its operation to a particular phase of the subject covered by the general law, or to a particular locality within the jurisdictional scope of the general statute.
........
However, since there is no rule of law to prevent the repeal of a special by a later general statute, prior special or local statutes may be repealed by implication from the enactment of a later general statute where the legislative intent to effectuate a repeal is unequivocally expressed. [1A Sutherland Statutory Construction (4th ed. Sands 1985) § 23.15 at 368 (footnotes omitted)].
Such clarity of intent to repeal is of particular importance in this context to avoid uncertainty where the Legislature may by majority vote adopt a law inconsistent with the charter it previously approved by two-thirds vote of each house. Further, such an approach would avoid the need for litigation each time our Legislature adopts a statute relating to municipal government. As said in one noted commentary:
The enactment of a municipal charter through special legislation is not a step to be taken lightly. It is a time-consuming and risky process. It involves *298 expert drafting and often months of lobbying to achieve the 2/3 majorities necessary in both houses.
Any significant local opposition to the Charter may ultimately cause its defeat, since an extraordinary majority and the Governor's signature is difficult enough to achieve in the best of circumstances.
Finally, special legislation once enacted can only be amended by similar special legislation. [34 Pane, N.J.Practice, Local Government Law, § 118 at 73 (1987)].

B.
The critical issue before us, then, is whether the MLUL intended to repeal the inconsistent appointment provisions of the Plainfield Charter. In the absence of an express repealer, we cannot find sufficient evidence of that intent.
The Municipal Planning Act of 1953 empowered the mayor to appoint Class IV members of the planning board. N.J.S.A. 40:55-1.4. See Gillson v. Heffernan, 40 N.J. 367, 378, 192 A.2d 577 (1963). Notwithstanding that legislation, the Charter, adopted at the time the Municipal Planning Act was in effect, gives the Council the right of advice and consent to such appointments. Section 4.8 provides that "notwithstanding any provision to the contrary" in "any statute applicable to the city," the power of appointment of the Planning Board members "shall be exercised by the mayor with the advice and consent of the council."[5] The Charter also expressly provides in § 2.7(a) that

*299 [c]ouncil procedures shall be governed by or pursuant to the charter. In the event of a conflict between any other applicable laws and this act, this act shall prevail.
Hence, the Legislature, in approving the Charter in 1968, found no policy embodied in the Municipal Planning Law, or otherwise, requiring it to disapprove or reject the Charter provisions.[6] As Judge Menza stated, "[i]t must be assumed that when the Legislature adopted the Plainfield Charter, it was aware of existing statutes concerning municipal appointment by a Mayor without the advice and consent of the City Council.... It would be fair to conclude, therefore, that the Plainfield Charter was intended to preempt the prior planning act so as to provide for the council's advice and consent."
The MLUL by L. 1975, c. 291, effective August 1, 1976 (see "Historical and Statutory Notes" to N.J.S.A. 40:55D-1 (West Supp. 1990)), differed little from the 1953 Planning Act with respect to membership on the Planning Board. The appointment procedure remained substantially unchanged with respect to the appointment of Class IV members. Class IV members are "to be appointed by the mayor," except where the ordinance provides otherwise with respect to certain specified forms of government. N.J.S.A. 40:55D-23. A 1979 amendment to the MLUL authorized the governing body to provide by ordinance for alternate members of the planning board, who are to be *300 appointed by the mayor, as "appointing authority for Class IV members." N.J.S.A. 40:55D-23.1.[7] Notwithstanding these provisions in the MLUL, Plainfield's ordinance requires appointment of Class IV members by the Mayor with the advice and consent of the Council.
The intent of the Legislature must be revealed by the statutory language, the "entire legislative scheme of which it is a part," Kimmelman v. Henkels & McCoy, Inc., 108 N.J. 123, 129, 527 A.2d 1368 (1987), "the policy behind a statute, concepts of reasonableness and legislative history." Coletti v. Union Co., C. Freeholders, 217 N.J. Super. 31, 35, 524 A.2d 1270 (App.Div. 1987). Given the absence of a material change in the MLUL provisions concerning the appointment process for Class IV Planning Board appointments, as compared with the predecessor Municipal Planning Law, we cannot conclude that the MLUL provisions reflect any intent to repeal the Charter provisions which were approved although inconsistent with the Municipal Planning Law. See also N.J.S.A. Const. Art. IV, § 7, par. 11 (requiring a liberal construction of constitutional and statutory provisions relative to municipal corporations where "not inconsistent with or prohibited by this Constitution or by law"). Certainly, there is neither language nor legislative history supporting such a conclusion. Further, as Judge Menza noted, provisions in the City Charter should not be lightly regarded, inasmuch as obtaining such a charter can be a long and difficult process with approval by two-thirds of each house of the Legislature hard to achieve. Thus, the language of § 4.8 of the Charter concerning its controlling provisions cannot be ignored. See also Pane, supra at 73.
We do not read § 81(b) of the MLUL as evidencing a different intent. Like N.J.S.A. 40:55-1.27, embodied in the former Municipal Planning Act of 1953, § 81(b) of the MLUL (which *301 provides in part that "[a]ny new appointments or reappointments to [Planning Boards and Boards of Adjustment] shall be governed by the provision of this act") was intended as a transitional provision.[8] The Legislature in adopting the MLUL did not wish to disrupt proceedings undertaken pursuant to the old planning act and did not require municipalities to immediately dissolve their planning boards and appoint new members. Pursuant to § 81(b), the modified procedures for appointments and reappointments were to take effect after the terms of existing members expired at the time of "new appointments or reappointments."
Finally, the Mayor argues that the appointment provisions of the MLUL must take precedence over any contrary law or ordinance, citing Gillson v. Heffernan, 40 N.J. 367, 378, 192 A.2d 577 (1963); Clifton v. Zweir, 36 N.J. 309, 323-325, 177 A.2d 545 (1962); Saverino v. Zboyan, 239 N.J. Super. 330, 339, 571 A.2d 327 (App.Div. 1990); Baptist Home of South Jersey v. Bor. of Riverton, 201 N.J. Super. 226, 233-235, 492 A.2d 1100 (Law Div. 1984). There is obvious merit to the proposition that municipal ordinances cannot be inconsistent with statutory authorization or requirements. However, these cases have no application with respect to the impact of a special charter approved by the Legislature on the issues before us.
In essence, we conclude that the stable and efficient operation of municipal government depends upon the predictability of interpretation and clarity of its governing laws. To function efficiently, special charter municipalities must assume that the provisions in their charters remain in effect unless general legislation expressly or clearly provides to the contrary. In this case, we find no basis for finding any legislative language, *302 policy or history sufficient to evidence an intent to repeal the charter provisions.
Affirmed.
NOTES
[1] By subsequently enacted general legislation effective January 9, 1982, L. 1981, c. 465, § 36, N.J.S.A. 40:69A-149.1 to -149.8, the Legislature authorized municipalities to adopt this form of government without special charter.
[2] Section 3.5(a) of the Charter provides that "[t]he Mayor shall appoint and remove officers and employees as authorized by the charter or administrative code; and shall, with the advice and consent of the council, make all appointments for which no other provision is made by or pursuant to the charter."
[3] The complaint alleges that the opinion was rendered by the Planning Board's attorney "upon the request of ... Defendant Mitchell's Corporation Counsel." Under § 4.7 of the Charter, the corporation counsel is to be appointed by the Mayor with the advice and consent of the Council. No issue concerning his appointment is raised before us. In any event, that attorney appeared "for the City of Plainfield" on behalf of the Mayor in the Law Division. However, the Mayor was represented before us by counsel for the Planning Board in the Law Division. Her brief before us was filed on behalf of the Mayor only.
[4] By constitutional amendment in 1875 the Legislature was prohibited from adopting private, local or special laws, including those relating to municipalities. See generally, Pane, 34 N.J.Practice, Local Government Law, § 115 at 70 (1987). The 1947 Constitution continued the prohibitions, except as expressly authorized in Art. IV, § 7, par. 10. See N.J.S.A. Const. (1947), Art. IV, § 7, par. 9(13). See also Williams, The New Jersey State Constitution, A Reference Guide at 78-79 (Greenwood Press 1990).
[5] Apparently pursuant to provisions of the MLUL, see N.J.S.A. 40:55D-23 to -27, and the Charter, the Plainfield Municipal Code was amended in 1981 to provide, in Article 21, § 3:21-1, for a nine member Planning Board consisting of the Mayor (Class I), a municipal official to be appointed by the Mayor (Class II), a Council member appointed to the Board by the Council (Class III), "(s)ix other citizens of the City to be appointed by the Mayor with the advice and consent of the City Council" (Class IV), and two alternates appointed by the Mayor (Class V). See N.J.S.A. 40:55D-23 and 23.1. The provisions of the MLUL relating to alternate members were adopted by L. 1979, c. 216 § 13. As no issue is before us, we do not pass upon the propriety of this composition under the Charter or otherwise, nor on its impact on the question of consistency of the Charter's interpretation.
[6] Apparently mayors and members of the city council for possibly as long as 20 years have understood the Charter as requiring Council consent to the appointment of Class IV members of the Planning Board. As Judge Menza suggested, this prior practice is "indicative of what local officials perceive the legislative intent to be." See County of Essex v. Waldman, 244 N.J. Super. 647, 664-666, 583 A.2d 384 (App.Div. 1990). See also Malone v. Fender, 80 N.J. 129, 137, 402 A.2d 240 (1979). Although the city is not an administrative agency, its officials, and particularly those in office at the time of adoption, are most likely to be familiar with the intended meaning of the Charter.

Given the language of the Charter, its § 4.8 and its contemporaneous construction by city officials, as well as a consistent pattern of interpretation by those officials for perhaps as long as twenty years, we conclude that its provisions were intended to supersede inconsistent provisions in the 1953 Planning Act.
[7] We do not intend this opinion to be definitive with respect to questions relating to membership or composition of Planning Boards under the MLUL.
[8] It was not codified, but is quoted in its entirety in "Historical and Statutory Notes" to N.J.S.A. 40:55D-1 in West "Supplementary Pamphlet" to N.J.S.A. 40:48 to 40:55 (1990) and is said to be "derived from [N.J.S.A.] 40:55-1.27." See N.J.S.A. 40:55D-1 (West Supp. Pamphlet 1990) at 337.