OSCAR R. WILENSKY, PLAINTIFF-APPELLANT, v. WILLIAM R. GURTMAN, DEFENDANT-RESPONDENT.

Argued September 28, 1953—Decided October 26, 1953.

*Mr. Oscar R. Wilensky* argued the cause *pro se*, appellant.

*Mr. Aaron R. Schomer* argued the cause for respondent.

PER CURIAM. The controversy is over the office of City Counsel of the City of Passaic. Plaintiff was first appointed in respect of a term purportedly beginning January 1, 1948 and ending December 31, 1950. He received a second appointment on April 1, 1951 "for the term prescribed by law"

which he contends related to a term beginning January 1, 1951 and ending December 30, 1953. However, on January 8, 1952 the defendant was appointed to succeed him. The Law Division held that the term legally subsisting on April 1, 1951 began on June 30, 1948 and expired June 30, 1951, so that plaintiff's appointment of April 1, 1951 was effective only until June 30, 1951 after which he was a holdover whose right to the office was terminable, and was terminated, by defendant's appointment. We of our own motion certified plaintiff's appeal to the Appellate Division.

Passaic in 1911 adopted and has since operated under the commission form of government. *R. S.* 40:70–1 *et seq.* Ordinances adopted from time to time changed the length of the term of office of the city counsel. The ordinance presently in effect was adopted in 1936 and fixes the term at three years, consistent with *R. S.* 40:171–109 requiring that the term for this and other offices therein named shall be for three years in cities having a population of between 55,000 and 125,000. No calendar date for the beginning of a term is specified by *R. S.* 40:171–109 or by the ordinance. The first appointment under the ordinance was for a three-year term beginning June 30, 1936. This established June 30 as the beginning date of successive terms triennially thereafter, *cf. Keffer v. Gaskill,* 88 *N. J. L.* 77 (*Sup. Ct.* 1915), unless, as plaintiff insists, *R. S.* 40:46–6, with which plaintiff's appointments purported to comply, and which provides that "the terms of office of all officers appointed * * * by the governing body of any municipality, * * * shall commence on January first of the year in which they are appointed," applies to cities operating under the commission form of government. But in *De Muro v. Janeczek,* 4 *N. J. Super.* 266 (*App. Div.* 1949), certification denied 3 *N. J.* 371 (1949), *R. S.* 40:46–6 was held to be inapplicable to commission-governed cities and to be applicable only "to municipalities that hold their elections in November and under whose form of government the governing body organizes on the succeeding first of January." We think the *De Muro* case was correctly decided and is

controlling against the plaintiff here. The judgment of the Law Division is therefore

Affirmed.

Burling, J. (dissenting). The initial problem here is to determine whether *L.* 1905, *c.* 3, *sec.* 4 (now incorporated in *R. S.* 40:46–6) was (and is) applicable to municipalities governed under the Walsh Act.

The Walsh Act provided (*L.* 1911, *c.* 221, *sec.* 2—see *R. S.* 40:71–9) that upon its adoption in a municipality and organization of the commissioners *first* elected "* * * the terms of all * * * officers whether elective or appointive, shall immediately cease and determine." However, general laws affecting the municipality were rendered inoperative only to the extent that they were "contrary to or inconsistent with" the Walsh Act. *L.* 1911, *c.* 221, *sec.* 18 (see *R. S.* 40:71–10). In addition it expressly continued as powers of the board of commissioners those powers theretofore had and exercised by the officers, boards and bodies replaced by the board of commissioners. *L.* 1911, *c.* 221, *sec.* 4 (see *R. S.* 40:72–2). A city that adopted the commission form of government under the Walsh Act was given "* * * all powers necessary for its government not in conflict with the laws applicable to all cities of this State. * * *" *L.* 1911, *c.* 221, *sec.* 8 (see *R. S.* 40:72–3). The board of commissioners was authorized to create subordinate boards. It was also authorized to "appoint such officers as it may deem necessary for the proper and efficient conduct of the affairs of the city," *L.* 1911, *c.* 221, *sec.* 4 (see *R. S.* 40:72–7), but the date of inception of a term of office, and the duration thereof, were not placed in the commissioners' hands, although the salary of officers was left to their determination. *L.* 1911, *c.* 221, *sec.* 4 (see *R. S.* 40:73–6). Appointment was required to be with reference to qualifications and fitness and without reference to political faith or party affiliation. *L.* 1911, *c.* 221, *sec.* 9 (see *R. S.* 40:73–1).

The legislative intent expressed in the Walsh Act was to effect municipal reform, but not merely by implication to

create exceptions to general laws applicable to all cities. Thus the Legislature terminated the initial (*i. e.*, prior to Walsh Act adoption) officeholder's right to serve out the unexpired term of an office, and required the *first* newly organized board of commissioners to appoint a qualified person to that office—but did not disturb the date of inception of office nor the length of the term thereof where already fixed by general law.

*L.* 1905, *c.* 3, *supra*, was such a general law and applied to *all* municipalities. It was not confined to municipalities in which elections were held in November. On the contrary it applied to *any* municipality and was designed to accomplish two things: (a) the election of elected officers (unless excepted therefrom) in November, to take office in January; and (b) to make appointive municipal officers' terms run, uniformly throughout the state, from 12 noon of the first day of January.

As has been demonstrated above, there is nothing in the Walsh Act expressly relieving municipalities governed thereunder from the application of *L.* 1905, *c.* 3, *sec.* 4, *supra.* (The election of commissioners is provided to occur in May, but the Legislature did not make a similar provision as to inception of the term of office for appointive officers). The philosophy appears to be that where party affiliation was not a qualification but the emphasis was on professional fitness (see *R. S.* 40:73–1, *supra*), a term for an appointed officer need not coincide with the terms of the governing body.

These views are fortified by legislative recognition. In *R. S.* 40:72–3 the Legislature has expressly applied *subtitle* 3 of *Title* 40 of the *Revised Statutes* (*R. S.* 40:42–1 *et seq.*) to commission-governed cities. This is corroborated by *R. S.* 40:42–1 wherein it is stated that "municipality" where used in *subtitle* 3 includes "any municipality governed by a board of commissioners." *Cf. R. S.* 40:42–2. Further *R. S.* 40:46–6, which incorporates *L.* 1905, *c.* 3, *sec.* 4, *supra*, is included in *subtitle* 3, and this section in express language excepts from application of its terms elected officers where "otherwise provided by law" but does not make that excep-

tion as to appointive officers. *Cf. Salter v. Burk*, 83 *N. J. L.* 152, 153, 155–157 (*Sup. Ct.* 1912). *Armore v. Town of West New York*, 119 *N. J. L.* 350, 351–354 (*E. & A.* 1938), while concerned with other statutory provisions having no application to the present case, is premised upon identical reasoning. Compare *De Muro v. Martini*, 137 *N. J. L.* 640, 643, 644 (*Sup. Ct.* 1948), affirmed 1 *N. J.* 516 (1949).

*L.* 1894, *c.* 162, *sec.* 1, as amended by *L.* 1900, *c.* 170, *sec.* 1 and by *L.* 1911, *c.* 315, *sec.* 1 (now incorporated in *R. S.* 40:171–109) has been held by the majority to be applicable in this case, and I agree with that conclusion. It appears not to be, and has not been held to be, self-executing. Therefore, although Passaic officially exceeded the 55,000 population standard expressed in that statute in 1920 (official census filed in 1921), it did not take effect in that city until it was invoked by the ordinance of June 9, 1936. At that time, under *L.* 1905, *c.* 3, *sec.* 4, *supra*, the term of the incumbent city counsel had expired (January 1, 1936) and the three-year term therefore could validly run only from that date (the statute, now contained in *R. S.* 40:171–109, provided that the three-year term of the "* * * first officers appointed hereunder shall date from the time of the expiration of the terms of their predecessors * * *."). Mathematical calculations therefrom show that the plaintiff's first appointment was for an unexpired term ending January 1, 1948. He was reappointed for a full term, which expired January 1, 1951, and held over thereafter under the express provisions of *R. S.* 40:171–109. Upon his reappointment he could be reappointed only for the unexpired term, that is, to January 1, 1954. His reappointment (to that unexpired term) occurred April 1, 1951. He could be removed only "for cause, after public hearing" under the Walsh Act. *R. S.* 40:72–7. His purported removal on January 19, 1952, as of January 8, 1952, was not effected in compliance with this statute.

The respondent, opposing the construction hereinabove placed upon the statutes, asserts that *Keffer v. Gaskill*, 88 *N. J. L.* 77, 80 (*Sup. Ct.* 1915), is dispositive against

application of *R. S.* 40:46-6 and its predecessors to this case. The *Keffer* case, *supra*, dealt with an elective office, and by the terms of *R. S.* 40:46-6 (and its predecessors), *supra*, an elective office was excluded from its operation where "otherwise provided by law." As related to appointed offices the decision in the *Keffer* case was dictum.

The plaintiff, to prevail in this type of action, must show his right to the office. This he has done to the extent of the foregoing statutory analysis and application thereof to the facts stipulated. It is also shown that he is qualified under *R. S.* 40:46-4 which qualifies *any* attorney for this office in *any* city. *R. S.* 40:46-4 is not inconsistent with the Walsh Act and supersedes residential requirements contained in the municipal charter. It is settled that provisions in municipal charters may be superseded by general legislation. *Cf. Bucino v. Malone*, 12 *N. J.* 330, 341-342 (1953); *Grogan v. DeSapio*, 11 *N. J.* 308, 314-315 (1953).

It was asserted that plaintiff was disqualified (by virtue of his retention as counsel for the North Jersey District Water Supply Commission) under *R. S.* 40:73-2, which reads:

"No officer or employee, elected or appointed in any such municipality shall be interested, directly or indirectly, in any contract or job for work or materials, or the profits thereof, or services to be furnished or performed for the municipality, and no such officer or employee shall be interested, directly or indirectly, in any contract or job for work or materials or the profits thereof, or services to be furnished or performed, for any person operating interurban railway, street railway, gas works, waterworks, electric light or power plant, heating plant, telegraph line, telephone exchange, or other public utility within the territorial limits of the municipality."

It is apparent that this section of the pertinent statutes (formerly section 7 of the Walsh Act) relates to private interests and not to state agencies. *Cf. City of Camden v. South Jersey Port Commission*, 4 *N. J.* 357, 367-368 (1950).

The further question whether plaintiff's interest in Dundee Water Power and Land Company constitutes disqualification under *R. S.* 40:73-2, *supra*, is without merit in view of the

express stipulation that the company is not a "public utility" entered into between the parties to this action.

For the reasons expressed in this opinion I would reverse the judgment of the Superior Court, Law Division, and require entry of judgment for the plaintiff. *R. R.* 1:9–1(*b*).

Mr. Justice HEHER authorizes me to state that he concurs in the views expressed herein.

*For affirmance*—Chief Justice VANDERBILT, and Justices OLIPHANT, WACHENFELD, JACOBS and BRENNAN—5.

*For reversal*—Justices HEHER and BURLING—2.