JOSEPH B. McCARTNEY, Jr., PLAINTIFF, v. NICHOLAS H. FRANCO, INDIVIDUALLY AND AS MAYOR OF THE CITY OF ORANGE, AND THE CITY OF ORANGE, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided March 2, 1964.

*Mr. Louis R. Lombardino,* attorney for plaintiff.

*Mr. Felix J. Verlangieri,* attorney for defendants.

GLICKENHAUS, J. C. C. (temporarily assigned). The present proceeding was initiated by complaint in lieu of prerogative writs.

On January 25, 1963 plaintiff was appointed to the board of tax assessors of the defendant City of Orange for a four-year term after July 1 next. At the time of plaintiff's appointment, Orange had a commission form of government, and plaintiff was duly appointed by the commissioner of revenue and finance. Plaintiff assumed office on February 1, 1963.

On June 19, 1962 the voters of Orange changed the form of the municipal government to Mayor-Council Plan C, pursuant to the Faulkner Act, the change to be effective on July 1, 1963.

Defendant Nicholas H. Franco was elected mayor on June 18, 1963, and assumed office on July 1, 1963. On July 1, Franco, by letter sent by registered mail, terminated the services of plaintiff. Also on that date, the city council passed a resolution to provide for the temporary organization of the city government pending the preparation of an Administrative Code. Section 7, entitled "Statutory Boards and Commissions," provided:

"All statutory boards and commissions heretofore established and existing within the city on June 30, 1963 are hereby continued and the members thereof shall be appointed as required by the charter; *except that the board of assessors shall not be deemed a statutory Board continued by this section.*" (Emphasis added)

This section was incorporated verbatim on July 30, 1963, in a duly enacted ordinance entitled, "An Ordinance To Provide For The Temporary Organization Of The City Government Pending The Preparation Of An Administrative Code." Thereafter, on October 2, 1963, "An Ordinance To Adopt An Administrative Code Of The City Of Orange Under Mayor-Council Plan C" was approved. Section 5.3 thereof is entitled "Division of Assessments" and provides that within the Department of Finance there shall be a Division of Assessments, the head of which shall be the city assessor.

Plaintiff seeks judgment adjudicating that his dismissal from his office was illegal; that rescission of the letter of termination should be granted; that the abolition of the board of assessors was illegal; that plaintiff was duly appointed as a member of the board of assessors of defendant city for a term ending on July 1, 1967, and is entitled to be reinstated and continued in such office for the duration of the term.

*N. J. S. A.* 40 :69A–207 provides that upon the change of the form of a municipal government under the Faulkner Act, all offices then existing in the municipality are abolished and the terms of all elected and appointed officers are terminated. The reason for these two objectives is so that a "clean slate" of elected and appointed personnel could be created by the first governing body elected under the Faulkner Act. *Broadway National Bank of Bayonne v. Parking Authority of Bayonne,* 40 *N. J.* 227, 235 (1963); *Loboda v. Clark Tp.,* 40 *N. J.* 424, 429 (1963); *Myers v. Cedar Grove Tp.,* 36 *N. J.* 51, 56 (1961).

However, *N. J. S. A.* 40 :69A–207 excludes from the above provisions certain classes of offices:

"* * * nothing in this section shall be construed to abolish the office or terminate the term of office of * * * any official or

employee now protected by any tenure of office law &ast; &ast; &ast;. If the municipality is operating under the provisions of Title 11 of the Revised Statutes (Civil Service) at the time of the adoption of an optional plan under this act, nothing herein contained shall affect the tenure of office of any person holding any position or office coming within the provisions of said Title 11 as it applies to said officers and employees. &ast; &ast; &ast;"

It is contended by plaintiff that he is a member of the unclassified Civil Service by the terms and provisions of *N. J. S. A.* 11:22-2, *Civil Service Rule* 7(2)(t) and *N. J. S. A.* 40:46-6.2, and is therefore protected from the termination of his term and the abolition of his office by *R. S.* 11:28-2. Conversely, defendant contends that the board of assessors was duly abolished on July 1, 1963, under authority of *N. J. S. A.* 40:69A-29(a), which reads:

"Each municipality governed by an optional form of government pursuant to this act shall, subject to the provisions of this act or other general laws, have full power to:
(a) organize and regulate its internal affairs, and to establish, alter, and abolish offices, positions and employments and to define the functions, powers and duties thereof and fix their term, tenure and compensation; &ast; &ast; &ast;."

*N. J. S. A.* 11:22-2(*o*), provides that the unclassified service shall include "Such other officers and positions not now included in the unclassified service by this section or by any other statute, as the Civil Service Commission shall, from time to time, determine, according to law, to be in the unclassified service."

The Civil Service Commission has, by *Civil Service Rule* 7(2)(t), included within the unclassified service all offices not specifically included in the rule and "for which some statute prescribes a fixed term."

*N. J. S. A.* 40:46-6.2 prescribes a fixed term of four years for the office of tax assessor. Thus, it must be concluded that plaintiff's position falls into the unclassified service.

Such positions are protected by *R. S.* 11:28-2, which provides:

"When it shall become necessary, for any cause, to unify, combine or transfer the functions of the government of any of the separate incorporated subdivisions of this state with the functions of any one or more governments of one or more incorporated subdivisions of this state, thereby setting up under the provisions of law a new combination of the functions of government, or when the form of government of any municipality shall have been or shall be changed, the officers and employees or persons in the classified and unclassified service of any subdivision of the government of this state where the civil service laws are operating shall be continued in service and all rights enjoyed as to pensions, terms of service and salaries shall continue notwithstanding such transfer, combination or unification of governmental functions, or change of form of government."

Plaintiff argues, therefore, that these sections, when read in conjunction with *Beirne v. Gangemi*, 74 *N. J. Super.* 557 (*App. Div.* 1962), certification denied 38 *N. J.* 307 (1962), are wholly dispositive of the issues *sub judice*. It is felt, however, that the decision in the *Beirne* case is not apposite. The issue for determination there was whether or not the adoption of the Faulkner Act by Jersey City *per se* abolished the office of collector of taxes. The court held that it did not. However, the question for determination here is whether the governing body may, after the adoption of the Faulkner Act, by affirmative action abolish a municipal office.

There is no question but that a municipal government has the power to abolish a municipal office. *Sutherland v. Board of Street and Water Commissioners of Jersey City*, 61 *N. J. L.* 436 (*Sup. Ct.* 1898). The abolition of a position under the Faulkner Act was considered in *Chirichella v. Dept. of Civil Service*, 31 *N. J. Super.* 404 (*App. Div.* 1954), wherein plaintiff had been appointed as secretary to the Director of Public Affairs of the City of Hoboken in 1947, at which time the municipality was operating under the commission form of government. In November 1952 Plan D of the Faulkner Act was adopted. On July 1, 1953, at the organization meeting under the new form of government, several ordinances were introduced and adopted by the mayor and council setting up six departments of government in the place of the five departments theretofore existing under the com-

mission form. The Department of Public Affairs was not recreated. Its former functions were allocated and distributed to and among the several newly created departments. On July 2, 1953 plaintiff was advised that his services were no longer required. On August 3, 1953 the city council adopted an ordinance repealing the ordinance of June 4, 1947 (which had created plaintiff's position).

The issue for determination, therefore, was whether plaintiff's position had been lawfully terminated either by the adoption of the Faulkner Act or by the ordinances abolishing that position and creating new departments (which did not include a Department of Public Affairs), or both. The court held:

> "Regardless of the action taken by council, acting under the provisions of the Faulkner Act to abolish the appellant's position, it has always been the settled rule of law that the governing body of a municipality may, by appropriate action, dispense with and abolish positions of public employment the need for which no longer exists; and that the abolishment of needless positions and to effect economy is in the public interest. *Hunziker v. Kent*, 111 *N. J. L.* 565 (*Sup. Ct.* 1933), cited in 172 *A. L. R.* 1371; *Kessel v. Civil Service Commission, supra* [130 *N. J. L.* 618]; *Sieper v. Dept. of Civil Service, Passaic*, 21 *N. J. Super.* 583 (*App. Div.* 1952); *Schnipper v. Twp. of North Bergen, supra* [13 *N. J. Super.* 11]." (31 *N. J. Super.*, at p. 410)

In this connection it should be stated that plaintiff makes no allegations of bad faith on the part of defendant city.

In the recent case of *Dobbs v. Pierce*, 76 *N. J. Super.* 64 (*Law Div.* 1962), a similar situation obtained. At the time of plaintiff's appointment, the City of Camden had a commission form of government. On July 1, 1961 Camden changed to Mayor-Council Plan B of the Optional Municipal Charter Law. At the organization meeting on July 1, 1961 an ordinance was passed adopting an administrative code for the city. The ordinance provided for the creation of the office of city assessor for one person. Plaintiff relied on the protection of tenure of office as a veteran. The court held that the board was abolished and the terms of office of its

members expired with it. "The new government was legally empowered to vest the division of assessments in a city assessor and did so by ordinance." (76 *N. J. Super.*, at *p.* 68)

█ The fact that a person is appointed for a definite term is no limitation of the power of a municipality to abolish the office. 3 *McQuillin, Municipal Corporations* (*5th ed.* 1963), § 12.119; *Boylan v. Newark,* 58 *N. J. L.* 133 (*Sup. Ct.* 1895). Thus, this court concludes that the resolution of July 1, 1963, and the subsequent ordinance of July 30, 1963, both of which specifically excepted the board of assessors, and the ordinance of October 2, 1963, which created the Division of Assessments, were sufficient to abolish the office held by plaintiff so long as the method chosen to abolish said office was one authorized by law.

In this connection it is urged by plaintiff that by reason of *N. J. S. A.* 40 :171–180.1 and 171–180.2, a referendum is required in order to abolish his position on the board of tax assessors. These sections provide:

*N. J. S. A.* 40 :171–180.1 :
"In any second-class city having a population of less than fifty thousand inhabitants, wherein it is now required to appoint a board of assessors or tax assessors, one for each ward of such city, the said board of assessors of taxes, or the office of tax assessors, one for each of the wards of such city, may be abolished, and there may be appointed in their stead one tax assessor for the whole of such city and assistants to the tax assessor as provided in this act."

*N. J. S. A.* 40 :171–180.2 :
"This act shall be operative upon its effective date but its provisions shall remain inoperative in any such city until the legal voters of such city have adopted its provisions at a general election."

To aid the court in determining the applicability of the above sections, the following facts have been stipulated by counsel :

1. That from prior to 1933, and up to the present, the City of Orange was and is a second-class city, having a population of less than 50,000.
2. That from prior to 1933, and up to July 1, 1963, the city was governed by the commission form of government, pursuant to the Walsh Act, *R. S.* 40 :70–1, *et seq.*, as amended.

3. That from September 15, 1933 to the present, the city was required by ordinance No. 1351, dated September 15, 1933, to have a board of assessors consisting of three members. The parties herein consent to the marking into evidence as a joint exhibit a certified copy of said ordinance.

4. That the city has never held a referendum adopting the provisions of *N. J. S. A.* 40:171–180.1, *et seq.*, to abolish the board of assessors in favor of a single assessor and assistants.

5. That the city has not had an assessor for each ward.

6. That the city had five wards prior to July 1, 1963, and four wards thereafter.

Assuming *arguendo* that the provisions of *N. J. S. A.* 40:171–180.1 *et seq.*, apply to the City of Orange, the court finds, however, that the applicability of the said sections is and must be circumscribed by the pertinent provisions of the Faulkner Act. One such provision is *N. J. S. A.* 40:69A–26, which is the section pertaining to the laws which shall govern the municipality after the adoption of an optional form of government:

"Upon the adoption by the qualified voters of any municipality of any of the optional forms of government set forth in this act, the municipality shall thereafter be governed by the plan adopted, by the provisions of this act common to optional plans and by all applicable provisions of general law, subject to the transitional provisions of article 17 of this act, unless and until the municipality should adopt another form of government as provided by law."

"General law" is defined in *N. J. S. A.* 40:69A–28:

"For the purposes of this act, a 'general law' shall be deemed to be any law or provision of law, *not inconsistent with this act*, heretofore or hereafter enacted which is by its terms applicable or available to all municipalities, and the following additional laws whether or not such additional laws are so applicable or available to all municipalities: legislation relating to taxation, local courts, education, health, public authorities serving more than one municipality, and municipalities in unsound financial condition." (Emphasis added)

It appears to the court that *N. J. S. A.* 40:171–180.1 *et seq.*, is *prima facie* inconsistent with the Faulkner Act, which was duly adopted by referendum by the citizens of Orange. *N. J. S. A.* 40:69A–29(a), heretofore set forth in full, is a

specific grant of power to the municipality to abolish offices. It will be noted that no attempt is made in this section to render such abolition dependent upon any method set forth in a prior general law.

 Furthermore, all grants of power are to be construed liberally in favor of the municipality. *N. J. S. A.* 40:69A–30 so provides:

"The general grant of municipal power contained in this article is intended to confer the greatest power of local self-government consistent with the Constitution of this State. Any specific enumeration of municipal powers contained in this act or in any other general law shall not be construed in any way to limit the general description of power contained in this article, and any such specifically enumerated municipal powers shall be construed as in addition and supplementary to the powers conferred in general terms by this article. All grants of municipal power to municipalities governed by an optional plan under this act, whether in the form of specific enumeration or general terms, shall be liberally construed, as required by the Constitution of this State, in favor of the municipality."

 When these sections are read in conjunction with *N. J. S. A.* 40:69A–207, heretofore discussed, it is evident that the intent of the Legislature was to give the newly formed government "the widest possible authority to determine the organization of departments and to control personnel" so that the "new municipal government should not be hampered in its organization by a variety of holdover boards, bodies and departments." *Myers v. Cedar Grove Tp.,* 36 *N. J.* 51, 57 (1961).

 To require that a referendum be held in order to validate the abolition of plaintiff's office would be totally inconsistent with the philosophy, both expressed and implied, of the Faulkner Act. *N. J. S. A.* 40:171–180.1 *et seq.,* is, therefore, not such a general law by the provisions of which Orange should be governed.

 A position created by ordinance can be abolished only by ordinance. *Padavano v. North Bergen Twp.,* 13 *N. J. Super.* 6, 10 (*App. Div.* 1951). Plaintiff's office was created by ordinance. The first ordinance adopted abolishing his

office was passed on July 30, 1963—29 days after the letter of termination was sent and the resolution excepting the board of assessors from continuance was passed. Therefore, the abolition of plaintiff's office occurred on July 30, 1963.

A judgment in conformity with this opinion may be submitted.