87 N.J. Super. 292 (1965)
209 A.2d 329
JOSEPH B. McCARTNEY, JR., PLAINTIFF-APPELLANT,
v.
NICHOLAS H. FRANCO, INDIVIDUALLY AND AS MAYOR OF THE CITY OF ORANGE, AND THE CITY OF ORANGE, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 23, 1965.
Decided March 9, 1965.
*294 Before Judges CONFORD, KILKENNY and LEWIS.
Mr. George J. Koelzer argued the cause for appellant (Mr. Louis R. Lombardino, attorney).
Mr. Felix J. Verlangieri argued the cause for respondents.
*295 The opinion of the court was delivered by KILKENNY, J.A.D.
Plaintiff appeals from that part of a final judgment of the Superior Court, Law Division, 82 N.J. Super. 570 (1964), which adjudicated that his office as a member of the board of assessors of the City of Orange was abolished by ordinance on July 30, 1963, thereby disentitling him to further employment as a member of that board.
Plaintiff contends: (1) the abolition of his office as a member of the board of assessors is barred by statute; (2) the city failed to comply with N.J.S.A. 40:171-180.1 et seq. in changing from a board of assessors to a single assessor; and (3) the ordinance of July 30, 1963 failed to operate to abolish his office.
The facts are not in dispute. By ordinance, made effective September 15, 1933, the city created a board of assessors consisting of three members. On January 25, 1963 plaintiff was appointed a member of the board of assessors and assumed office on February 1, 1963. At that time, the board of assessors was assigned to the Department of Revenue and Finance. Orange then operated under the Commission form of government. However, on June 19, 1962 the voters of Orange had adopted a Mayor-Council Plan C form of government, pursuant to the Faulkner Act, N.J.S.A. 40:69A-55 et seq., to become effective July 1, 1963, in place of the Commission. As the result of an election held on June 18, 1963, defendant Nicholas H. Franco became Mayor. He and the new Council assumed office on July 1, 1963.
On July 1, 1963 Mayor Franco notified plaintiff by registered letter that, "upon the adoption of the new form of government of the City of Orange, N.J., in accordance with the Statute, your services as tax assessor is hereby terminated." On the same date, according to the agreed statement in lieu of record, the City Council, by ordinance, continued in existence all departments, boards and offices previously in existence under the Commission form of government, "with the sole exception of the Board of Assessors." Also on July 1, 1963 the Council adopted a resolution to provide for the *296 temporary organization of the city government, pending the preparation of an administrative code. Section VII of said resolution, entitled "Statutory Boards and Commissions," provided "* * * except that the Board of Assessors shall not be deemed a statutory board continued by this section."
On July 30, 1963 the City Council adopted an ordinance entitled "An ordinance to Provide for the Temporary Organization of the City Government pending the preparation of an Administrative Code." In this ordinance, section VII of the aforesaid resolution of July 1, 1963 was incorporated verbatim.
On October 2, 1963 the City Council adopted an ordinance establishing an "Administrative Code" and in section 5.3 thereof, entitled "Division of Assessments," provided that such division would be in the Department of Finance and the head of the division "shall be the city assessor." While there was no provision in this Administrative Code expressly abolishing the old board of assessors, plaintiff agrees, although at the same time disputing the legal validity thereof, that the new code did effect a change from the former three-member board of assessors to a single city assessor, especially since prior ordinances inconsistent with the Administrative Code were expressly repealed thereby.
At all times relevant herein, the City of Orange has been subject to the provisions of the Civil Service Act, N.J.S.A. 11:1-1 et seq.
Orange is classified as a city of the second class. Its population, according to the 1960 Federal census, was 35,789. It is stated in the agreed statement in lieu of record, "At no time subsequent to 1930, and up to the present, has the population of the Defendant City of Orange been more than 50,000, nor less than 35,000."

I.
N.J.S.A. 40:46-6.2 prescribes a fixed term of four years for the office of tax assessor. The trial court found, and *297 the city does not dispute, that plaintiff was in the unclassified service of Civil Service. Moreover, it is seemingly agreed that, since plaintiff's term was fixed by law, he does not enjoy so-called "tenure of office" protection as a civil service employee, but merely a right, at most, to claim the office and the emoluments thereof for the unexpired portion of the term. The law on this point is well settled. Mensone v. New Jersey Dept. of Civil Service, 30 N.J. Super. 218, 223 (App. Div. 1954).
Except where an office or position is required by statute, "the governing body of a municipality may, by appropriate action, dispense with and abolish positions of public employment the need for which no longer exists; and that the abolishment of needless positions and to effect economy is in the public interest." Chirichella v. Department of Civil Service, 31 N.J. Super. 404, 410 (App. Div. 1954). As aptly stated in Sutherland v. Board of Street and Water Commissioners of Jersey City, 61 N.J.L. 436, 437 (Sup. Ct. 1898), where claim to tenure under a statute was made by an honorably discharged veteran and denied:
"But it is settled that statutes of this nature are not designed to prevent the abolition of an office and the transfer of its duties to another official, when such a course is taken bona fide for economical reasons, or for the promotion of greater efficiency in the public service."
In the instant case, as the trial court observed, "plaintiff makes no allegation of bad faith on the part of the defendant City of Orange."
The fact that a person is appointed for a definite term does not preclude a municipality from abolishing the office or position. Boylan v. Board of Police Com'rs of City of Newark, 58 N.J.L. 133 (Sup. Ct. 1895); Van Horn v. D'Arcy, 88 N.J.L. 675 (E. & A. 1915); May v. Board of Com'rs of Town of Nutley, 111 N.J.L. 166 (Sup. Ct. 1933); 3 McQuillan, Municipal Corporations, sec. 12.119, pp. 427 et seq.
*298 The Faulkner Act did not take away the established right of a municipality to abolish offices or positions, when the action is adopted in good faith to effect economy, provide greater efficiency or otherwise promote the public interest. Rather, this statute, N.J.S.A. 40:69A-29(a), expressly confirms the power of each municipality governed by its provisions to:
"(a) organize and regulate its internal affairs, and to establish, alter, and abolish offices, positions and employments and to define the functions, powers and duties thereof and fix their term, tenure and compensation." (Italics ours)
Chirichella, supra, is an instance of the exercise of this power under the Faulkner Act. As was stated in Downey v. Board of Education of Jersey City, 74 N.J. Super. 548, 554 (App. Div. 1962):
"The plain and all-pervading intent of the Faulkner Act is to give a municipality which adopts one of its optional plans a new broom."
See, too, Myers v. Cedar Grove Township, 36 N.J. 51, 56 (1961); Broadway National Bank of Bayonne v. Parking Authority of the City of Bayonne, 40 N.J. 227, 235 (1963); Loboda v. Clark Tp., 40 N.J. 424, 429 (1963).
N.J.S.A. 40:69A-207 provides that, upon change of the form of government under the Faulkner Act, all offices then existing in the municipality are abolished and the terms of all elected and appointed officers are terminated. The reason for this general provision is to enable the new governing body to proceed with a "clean slate" of personnel. By way of exception, the "office" or "term of office" of any officials and employees protected by any tenure of office law is preserved. Beirne v. Gangemi, 74 N.J. Super. 557 (App. Div. 1962). But offices and positions may subsequently be abolished by proper municipal action, just as they could have been prior to adoption of the Faulkner Act, and the tenure rights of the holders thereof can thereby be lost.
*299 Also, by way of express statutory exception in N.J.S.A. 40:69A-207, the offices of members of certain specified public boards, such as boards of education, are saved from the abolition by the adoption of the act of offices generally. But boards of assessors are not included among those coming within the statutory exception. See Dobbs v. Pierce, 76 N.J. Super. 64 (Law Div. 1962), for a case where, after adoption of the Mayor-Council Plan B in Camden, the old board of assessors was abolished and a new single city assessor was substituted as here. Though there are some factual differences between that case and this, we agree with that part of the opinion in Dobbs v. Pierce, wherein the court said:
"The new government was legally empowered to vest the division of assessments in a city assessor and did so by ordinance." (at page 68)
We conclude that the City of Orange was not barred by statute from abolishing its old three-member board of assessors and substituting in its place a single city assessor.

II.
Plaintiff argues that the city failed to comply with N.J.S.A. 40:171-180.1 et seq. in effecting a change from a board of assessors to a single assessor. That statute provides a method for abolishing a board of assessors in favor of a single assessor in certain second class cities having a population of less than 50,000.
The simple answer to this argument is that N.J.S.A. 40:171-180.1 et seq., adopted in 1947, never became operative in the City of Orange. This 1947 statute was permissive legislation, not operative until approved by the voters at a general election. N.J.S.A. 40:171-180.2. The voters of Orange never adopted the provisions of this act. Moreover, the city never had a board of assessors, one for each of its five wards, as mentioned in N.J.S.A. 40:171-180.1. The three-member board of assessors in the City of Orange existed pursuant to the 1933 ordinance, as noted above. Therefore, *300 N.J.S.A. 40:171-180.1 et seq., providing for a referendum to effect a change to a single assessor, has no applicability to the instant case. N.J.S.A. 40:171-180.3.
Plaintiff admits that N.J.S.A. 40:171-180.1 et seq. is inoperative in Orange because it was never approved by the voters there. However, he argues that this is the only statute applicable to the city by which it could effect a legal change from a board of assessors to a single city assessor. We do not agree. The Faulkner Act itself, N.J.S.A. 40:69A-29(a), quoted above, is sufficiently broad in language to authorize such a change. The board of assessors, having been created by the 1933 ordinance, was properly abolished by ordinance. Padavano v. North Bergen Township, 13 N.J. Super. 6, 10 (App. Div. 1951). The 1947 New Jersey Constitution, Art. IV, § VII, par. 11, provides that provisions of any law concerning municipal corporations formed for local government "shall be liberally construed in their favor" and the powers of such municipal corporations "shall include not only those granted in express terms but also those of necessary or fair implication, or incident to the powers expressly conferred, or essential thereto, and not inconsistent with or prohibited by this Constitution or by law." See, too, N.J.S.A. 40:69A-30 providing for liberal construction of the Faulkner Act "in favor of the municipality."
As stated in Myers v. Cedar Grove Township, supra, 36 N.J., at p. 57: "* * * the new municipal government should not be hampered in its organization by a variety of holdover boards, bodies and departments." While this authority to abolish offices is subject to the applicable principles of "general law," N.J.S.A. 40:69A-26, we find no general law precluding the action taken by the city in this case. The Faulkner Act legally justifies what was done in the instant case. It would indeed be a legal anomaly if the City of Orange, having created a three-member board of assessors by its 1933 ordinance, had no statutory power to abolish it by ordinance. We are satisfied that the Legislature never intended to shackle the City of Orange in any such manner.

*301 III.
Plaintiff's final contention, that the July 30, 1963 ordinance failed to abolish his office as a member of the board of assessors, lacks substantial merit.
Though the language of this ordinance is not as explicit as it might have been and does not say, in so many words, that the old board of assessors is hereby abolished, the intention of the City Council is quite manifest. The ordinance, confirmatory of the July 1, 1963 resolution, states plainly that all existing boards and commissions were being continued, "except that the board of assessors shall not be deemed a statutory Board continued by this section." Reading this provision along with all the cognate legislation adopted by the City Council, there appears to be no doubt that the municipal intention was to abolish the board of assessors from and after July 1, 1963. We are satisfied that the ordinance of July 30, 1963 was intended to and did legally accomplish that result.
The judgment is affirmed.