EDMUND J. CORRIGAN, PLAINTIFF, v. ZENON PALKOSKI, MAYOR OF THE TOWNSHIP OF BERKELEY, DEFENDANT.

Superior Court of New Jersey
Law Division Ocean County

Decided September 19, 1986.

*Edmund J. Corrigan,* plaintiff, *pro se.*

*Joseph L. Foster* for defendant (*Russo, Courtney, Foster, Secare, Tassini & Ford,* attorneys).

SERPENTELLI, A.J.S.C.

The dispute in this case evolves from the recent amendment of the Optional Municipal Charter Law, commonly known as the Faulkner Act. The issue presented is who has the authority in a municipality functioning under the Faulkner Act to appoint members to the board of adjustment.

Defendant mayor asserts that Chapter 374 of the Laws of 1985 amends the Faulkner Act to vest appointment authority in the mayor subject to the advice and consent of the township council. Plaintiff contends that the amendment does not affect the provisions of the Municipal Land Use Law, specifically *N.J.S.A.* 40:55D–69, which gives the "governing body" the right to determine by ordinance the method of appointment of board of adjustment members. The Municipal Land Use Law defines the term "governing body" to mean "the chief legislative body." *N.J.S.A.* 40:55D–4.

Chapter 374 of the Laws of 1985 makes several changes to the Optional Municipal Charter Law. *N.J.S.A.* 40:69A–1 *et seq.* The legislative history reveals that while the bill was amended several times before it became law, a central theme underlying each draft was the clarification of the separation of powers between the executive and legislative branches within this form of government. Thus, § 1 of Chapter 374 provides in part:

> For the purpose of the construction of all other applicable statutes, unless the explicit terms and context of the statute require a contrary construction, any administrative or executive functions assigned by general law to the governing body shall be exercised by the mayor, and any legislative and investigative functions assigned by general law to the governing body shall be exercised by the council. . . .

General law is defined by the Faulkner Act in *N.J.S.A.* 40:69A–28 as follows:

> For the purposes of this act, a "general law" shall be deemed to be any law or provision of law, not inconsistent with this act, heretofore or hereafter enacted which is by its terms applicable or available to all municipalities, . . . .

The mayor sought to exercise appointment authority over the board of adjustment members based on the amended language of *N.J.S.A.* 40:69A–43(f). Before amendment that section read: ·

> Whenever in any city of the first class having a population of more than 250,000 the governing body is authorized by any provision of general law to appoint the members of any board, authority or commission, such power of appointment shall be deemed to vest in the mayor with the advice and consent of the council.

Section 6 of Chapter 374 amended that section to read:

> Whenever the governing body is authorized by any provision of general law to appoint the members of any board, authority or commission, such power of

appointment shall be deemed to vest in the mayor with the advice and consent of the council, unless the specific terms of that general law clearly require a different appointment procedure, or appointment by resolution in which case the appointment shall be by the council.

Thus, the amended section eliminates the reference to cities of the first class and adds two exceptions under which the amendment would not be applicable. The resolution of this case depends upon an interpretation of the first exception, that is, "unless the specific terms of that general law clearly require a different appointment procedure." (*Cf. Robertson v. Washington Tp. M.U.A.*, 211 *N.J.Super.* 504 (Law Div.1986) which considers the other exception—"appointment by resolution.").

As might be expected, both parties find support for their position in the wording of the exception. Plaintiff argues that the provisions of the Municipal Land Use Law, *N.J.S.A.* 40:55D-1 *et seq.*, are general laws applicable to all municipalities. Furthermore, he argues, *N.J.S.A.* 40:55D-69 is a general law providing a specific method of appointment for board of adjustment members throughout the state regardless of the local form of government. Defendant counters by seizing on the phrase "specific terms" of a general law. He contends that even if *N.J.S.A.* 40:55D-69 is a general law, it has no specific terms detailing who has appointment authority. It leaves an option to the governing body to decide that by ordinance. Defendant concludes that since there are no specific terms to the contrary in statutory law, the Faulkner Act provisions prevail to place the appointment power with the mayor. Defendant also argues that the purpose of the amendment is to create a "symmetry" between the authority of the mayor to appoint planning board members under existing law (*N.J.S.A.* 40:55D-23) and the alleged right of the mayor to appoint board of adjustment members under the amendment before the court.

The semantic debate allows for reasonable argument on both sides. This is obviously not a case where the clear language of the statute would preclude the court from utilizing legislative history. *Hancock v. Board of Review*, 46 *N.J.Super.* 418

(App.Div.1957). The ambiguities justify resort to the statements appended to the bills, the conditional veto message of the Governor and the subsequent legislative response. *Howard Savings Inst. v. Kielb,* 38 *N.J.* 186 (1962); *Loveladies Property Owners Ass'n. v. Raab,* 137 *N.J.Super.* 179 (App.Div.1975).

As noted, the legislation went through several amendments. However, before the bill was presented to the Governor, there were no legislative statements or drafting changes which shed any light on the issue before the court. The Governor's conditional veto message dated August 28, 1985 and the legislative response in the form of the finally adopted amendment do provide a strong indication of legislative intent.

The Governor's statement first recognizes that the purpose of the bill is to clarify the separation of powers between the executive and legislative branches in the mayor-council Faulkner Act communities. The message then recommends a series of detailed technical amendments to the bill, most of which relate to that purpose. The most instructive part of the statement as it concerns this case follows:

> ... I also wish to clarify the section of the bill that extends the right of the mayor in any municipality operating under this form of government to make appointments to boards, authorities or commissions with the advice and consent of the council to ensure that specific terms of general law now on the books continue to operate for appointments to such entities as zoning boards of adjustments and municipal utilities authorities.
>
> I am also suggesting that the section amending the Municipal Land Use Law concerning the appointment of certain classes of planning board members be deleted. I believe that amendments to the Municipal Land Use Law or any other similar general legislation should be considered separately and not as part of a clarifying statute related to the Optional Municipal Charter Law.

The first clarification quoted above concerning boards, authorities or commissions addresses itself directly to *N.J.S.A.* 40:69A–43(f) as amended, which is the focal point of this case. The Governor seeks "to ensure" that "the specific terms of general law now on the books continue to operate for appointments to such entities as zoning boards of adjustment and municipal utilities authorities." It is true that this language did not result in a legislative amendment. Defendant argues that

the failure of the Legislature to further amend this language demonstrates a legislative intent to ignore the Governor's statements. However, the argument flies in the face of two other facts from which strong inferences flow.

First, it is to be noted that the Legislature adopted, almost verbatim, virtually every specific wording change the Governor recommended. It can be argued, therefore, that the Legislature saw no need to change the wording concerning boards, authorities and commissions because it was believed that it accomplished what the Governor sought to ensure. If the Legislature did not intend that, why would it not clarify the wording to make it evident that it disagreed with the Governor's interpretation?

Even more revealing of legislative intent is the Governor's second clarification quoted above and the legislative response. The Governor suggested deletion of the section amending the Municipal Land Use Law concerning appointment of certain planning board members. The Governor's rationale was that amendments to the Municipal Land Use Law or similar general legislation "should be considered separately." The legislative response was complete concurrence. The section was deleted in its entirety. *Senate Bill* 1206, § 11 (1985). It must be assumed that the Legislature concurred with the Governor's rationale when it deleted § 11. Obviously, the same rationale is applicable to zoning board members since their appointment is also pursuant to the Municipal Land Use Law. It is simply not reasonable to suggest that the Legislature thought it appropriate to amend the Municipal Land Use Law as it relates to appointment of zoning board members through an amendment to the Faulkner Act but thought it inappropriate to do so as it relates to planning board members.

■ The Legislature is presumed to be familiar with its own prior enactments. *Brewer v. Porch,* 53 *N.J.* 167, 174 (1969). The provisions of the Faulkner Act "cannot be construed as an entirely independent scheme, separate and apart in every re-

spect from" other general laws. *Cf. Pritel v. Burris,* 94 *N.J. Super.* 485, 492 (App.Div.1967). Indeed, as noted, the Faulkner Act incorporates the provisions of general law and should be read *in pari materia* with it. *Seligson v. De Bruin,* 174 *N.J. Super.* 60, 69 (Law.Div.1980).

Intention to repeal a prior statute must be clear, manifest and unequivocal since implied repealers are not favored. *State v. States,* 44 *N.J.* 285, 291 (1965). The Supreme Court said in *Swede v. City of Clifton,* 22 *N.J.* 303 (1956):

> The question of repeal is essentially one of legislative intention; and there is a presumption as a matter of interpretive principle and policy against an intent to effect a repeal of legislation by mere implication. The purpose so to do must be free from all reasonable doubt. Repeals by implication are not favored in the law; and where the statutory provisions may reasonably stand together, each in its own particular sphere of action, there is not the repugnancy importing the design to repeal the earlier provision. [at 317; citations omitted]

Finally, even if the court did not have the benefit of this instructive legislative history, the same result would be dictated. First, it is not sensible to conclude that the Legislature intended to amend such comprehensive legislation as the Municipal Land Use Law in such an oblique manner. To sustain defendant's position an inference must be drawn from imprecise language in the Faulkner Act to amend the clear language of the Municipal Land Use Law. Absent unequivocal language to the contrary, it cannot be presumed that the Legislature acted in that fashion. For the same reasons, it cannot be presumed that the Legislature intended to create a symmetry in the method of appointment of board of adjustment and planning board members through such vague language.

Secondly, defendant's principal argument is founded on the premise that there are no *"specific terms"* in a general law concerning the appointment of board of adjustment members. This highly technical and attenuated position places undue emphasis on the phrase "specific terms" and gives inadequate attention to the context within which it is used. The amendment gives the mayor appointment power whenever the "governing body" is given that power in a general law, "unless the

specific terms of that law require a different appointment procedure." The amendment thus addresses the separation of powers issue by providing that the mayor shall have the power of appointment if the general law merely authorizes appointment by "the governing body." The purpose is to give clear and definitive meaning to the term "governing body" when it is used in that generic sense.

In effect, a presumption is created if the statute is not clear. However, the Legislature has also created two exceptions in *N.J.S.A.* 40:69A–43(f). The exception pertinent to this case provides that if the specific terms of the general law require a different appointment procedure, the presumption created for clarification purposes falls. If the general law does not only give appointment authority to "the governing body" but instead specifically requires a different procedure, that procedure prevails.

As noted at the outset of this opinion, *N.J.S.A.* 40:55D–69 requires the governing body to establish by ordinance the method of appointment of board of adjustment members and *N.J.S.A.* 40:55D–4 defines "governing body" as the chief legislative body. Thus, a "different appointment procedure" is established in general law. The legislative body, here the township council, must first adopt an ordinance establishing the method of appointment. Ultimately, it could choose to vest the mayor with the right to make the appointments. Here it has vested itself with the power. The amendment to the Faulkner Act has not taken that option away from the township council. Therefore, defendant is permanently restrained from attempting to make appointments of the board of adjustment members.