The judgment appealed from is therefore affirmed in all respects.

571 A.2d 327

ANGELO SAVERINO, ALAN TAUBENKIMEL, ALBERT GELLER, RAYMOND GUNTHER AND JACK PETTIT, PLAINTIFFS-APPELLANTS, v. STEVAN ZBOYAN, IN HIS CAPACITY AS THE MAYOR OF THE TOWNSHIP OF BRICK, AND THE TOWNSHIP OF BRICK, A NEW JERSEY MUNICIPAL CORPORATION, THOMAS STEINBACHER, ROBERT HESLIN, ARTHUR WEBER, JOHN PARADES, CAROL PATETTA AND MARY LOU POWNER, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued March 5, 1990—Decided March 13, 1990.

Before Judges O'BRIEN, HAVEY and STERN.

*Raymond V. King* argued the cause for appellants (*Lewis & Wood*, attorneys; *Raymond V. King* on the letter brief).

*Thomas E. Monahan* argued the cause for respondents (*Gilmore & Monahan*, attorneys; *Michael B. Lavery* on the letter briefs).

The opinion of the court was delivered by

HAVEY, J.A.D.

The central question raised by this appeal is whether a modification to a municipality's Faulkner Act charter, changing the time of municipal elections from May to November, extinguishes the terms of incumbent Class IV planning board and zoning board members. The trial court concluded that the change in the time of election constituted a "complete and separate form of government," thereby terminating the terms of all appointed officers in the municipality. *See N.J.S.A.* 40:69A–24 and 207. We disagree. Brick Township's adoption of the "alternative" under *N.J.S.A.* 40:69A–25.1, which changed the time of election, constituted a modification of an existing optional plan of government, not an adoption of an entirely new optional plan. Therefore, *N.J.S.A.* 40:69A–207, which abolishes all offices and extinguishes the terms of all elected and appointed officials upon adoption of an optional plan, does not apply. We therefore reverse.

Brick Township is a municipal corporation organized under the Optional Municipal Charter Law of 1950, *N.J.S.A.* 40:69A–1 *et seq.* (Faulkner Act). In an election conducted in May 1966, the township adopted a "Mayor–Council Plan B" form of government as then provided by *N.J.S.A.* 40:69A–49 through 54, now repealed.

In 1981, the Legislature amended the Faulkner Act by eliminating the various sub-plans under the four optional plans of government. *See L.*1981, *c.* 465, § 44. However, a grandfather clause, *N.J.S.A.* 40:69A–208.1, permitted continuance of abolished governmental forms adopted by municipalities prior to 1981, such as Brick's Mayor–Council Plan B.

During 1987–1988, a movement was initiated in the township seeking a modification of the charter to provide for partisan elections, rather than non-partisan, to be conducted in November, rather than May. A petition of approximately 2,697 voters was presented to the governing body, which adopted an ordinance presenting the proposed modification to the voters under the initiative and referendum section of the act, *N.J.S.A.* 40:69A–184. *See also N.J.S.A.* 40:69A–25.1. At that time, there were 30,366 registered voters in the township. The petition was certified as sufficient by the municipal clerk pursuant to *N.J.S.A.* 40:69A–187.

In the November 1988 referendum, the voters adopted the modification. Accordingly, the township's charter was amended pursuant to *N.J.S.A.* 40:69A–25.1 and –34.1 to provide that all future elections were to be held in November, and that governmental reorganization would be held on January 1 next following the election.

In the November 1989 general election, defendant Stevan Zboyan was elected mayor, and four of the incumbent council members were defeated by a new slate of candidates. As of that date, plaintiffs Albert Geller and Raymond Gunther were Class IV planning board members, appointed on July 1, 1986, for four-year terms. *See N.J.S.A.* 40:55D–23b. Plaintiff Jack Pettit was an alternate planning board member, appointed on July 16, 1988 to fill an unexpired two-year term. *See N.J.S.A.* 40:55D–23.1. Plaintiff Alan Taubenkimel was a zoning board member, appointed on July 1, 1986 for a four-year term, and plaintiff Angelo Saverino was an alternate member, appointed on July 1, 1988 for a two-year term. *See N.J.S.A.* 40:55D–69.

Prior to the January 1, 1990 organization meeting, the newly elected mayor and council advised plaintiffs that their terms of office to their respective boards were deemed terminated by virtue of the change in time of election. At the organizational meeting, Zboyan appointed defendants Thomas Steinbacher, Robert Heslin and Arthur Weber to replace plaintiffs Geller,

Gunther and Pettit on the planning board. The newly elected council appointed defendants John Parades, Carol Patetta and Mary Lou Powner as zoning board members to replace Saverino, Taubenkimel, and to fill an existing vacant seat.

On January 3, 1990, plaintiffs filed the present action in lieu of prerogative writs challenging the action taken by the mayor and council. They also sought temporary restraints to enjoin the reorganization of the planning and zoning boards. On January 11, 1990, an order was entered restraining the respective boards from reorganizing until plaintiffs' application for permanent restraints could be heard.

On January 16, 1990, the trial court lifted the temporary restraints and dismissed plaintiffs' complaint. It reasoned that the "precise language" of *N.J.S.A.* 40:69A–24 "makes it clear that any change using the forms of government in the Faulkner Act comes within the meaning of *N.J.S.* 40:69A–24." Section 24 provides:

> For the purposes of this act each of the optional plans of government provided in this act, and each of said optional plans as modified by any available provisions concerning the time of elections, size and terms of council and number of wards, is hereby declared to be a complete and separate form of government provided by the Legislature for submission to the voters of the municipality.

The court concluded that once there is a "change," *N.J.S.A.* 40:69A–207 applies, which provides in applicable part that:

> At 12 o'clock noon on the effective date of an optional plan adopted pursuant to this act, all offices then existing in such municipality shall be abolished and the terms of all elected and appointed officers shall immediately cease and determine[.]

Therefore, the court held that plaintiffs' terms of office were extinguished. By order dated January 17, 1990, we denied plaintiffs' motion to stay the organization meetings, but accelerated the appeal.

In construing section 24, we must not only consider its language, but also the entire legislative scheme of which it is a part. *Kimmelman v. Henkels & McCoy, Inc.*, 108 *N.J.* 123, 129, 527 *A.*2d 1368 (1987). As stated, in 1981 the Legislature

amended the Faulkner Act and abolished the multitude of sub-plans under the four basic plans of government. *See* *L.*1981, *c.* 465, § 44. There are now four optional plans: Mayor–Council Plan (Article 3); Council–Manager Plan A (Article 9); Small Municipality Plan A (Article 13), and the Mayor–Council–Administrator Plan (Article 16A). The act, as amended, provides that upon petition of the registered voters, an election shall be held upon the question of adopting any of the "optional plans of government." *N.J.S.A.* 40:69A–19. A petition, calling for such an election (in a municipality the size of Brick), requires 20% of all the registered voters of the municipality. *See N.J.S.A.* 40:69A–19(b).

Upon abolishing the sub-plans by *L.*1ᵗ⁹1 *c.* 465, the Legislature adopted *N.J.S.A.* 40:69A–25.1, which permits a municipality "governed by a plan of government adopted pursuant to [this act]" to amend its charter to include various alternatives "permitted under that plan of government." These alternatives are set forth in five separate "groups," and include the "alternative" of holding municipal elections in either May or November (Group A). *See N.J.S.A.* 40:69A–25.1b. Thus, a mayor-council plan of government, holding its regular municipal election in May pursuant to *N.J.S.A.* 40:69A–34.1(a), may adopt "alternative" Group A and change its election to November. In contrast to *N.J.S.A.* 40:69A–19, which requires a petition of at least 20% of all the registered voters (in the case of a municipality the size of Brick), in order to adopt one of the four optional plans of government, an "alternative" under a plan may be submitted to the voters by petition signed by a number of the legal voters equal in number to at least 15% of the total votes cast in the last general assembly election. *See N.J.S.A.* 40:69A–184.

To us, this statutory scheme makes clear that the Legislature carefully distinguished between adoption of one of the four plans of government, and adoption of an "alternative" under an existing plan of government. The distinction is best underscored by the significant difference between the number of

voters necessary to adopt an optional plan of government, in contrast to the number required to adopt an "alternative." For example, a petition calling for adoption of an optional plan in Brick Township would have required 6,073 signatures of registered voters, whereas the petition filed was signed by only 2,697 registered voters.

■ In our view, section 207 is clear. The section reads:

> At 12 o'clock noon on the effective date of *an optional plan adopted pursuant to this act,* all offices then existing in such municipality shall be abolished and the terms of all elected and appointed officers shall immediately cease and determine[.] [Emphasis added].

Hence, only upon the *adoption* of one of the *optional plans* of government shall all municipal offices be abolished and the terms of all elected and appointed officers "cease and determine." Of significance is that when the Legislature adopted section 25.1 in 1981, it did not amend section 207 to provide that upon the effective date of the adoption of an optional plan "or of an alternative under *N.J.S.A.* 40:69A–25.1," all offices shall be abolished and all terms of elected and appointed officers shall cease and determine. Our function is to "enforce the legislative will as expressed by the clear language of the statute." *Howell Tp. v. Manasquan River Regional,* 215 *N.J. Super.* 173, 181, 521 *A.*2d 858 (App.Div.1987). We conclude that if the Legislature intended to extinguish the terms of all appointed officials under section 207 upon adoption of an "alternative" under section 25.1, it would have so stated.

Indeed, in other sections of the act, as amended by *L.*1981, *c.* 465, the Legislature expresses an intention that adoption of an "alternative" pursuant to section 25.1 does *not* extinguish the terms of appointed officials under section 207. For example, when a municipality adopts the Group A "alternative," changing the time of election, the terms of all council members and directly elected mayor, if affected, terminate on June 30 or December 31, as appropriate to the election provisions of the amended charter. *See N.J.S.A.* 40:69A–25.2. However, section 25.2 does not state that the terms of *appointed* officials shall

terminate. Moreover, section 207 provides that the terms of "all elected and appointed officers" shall "cease and determine" upon the adoption of an optional plan. If the Legislature intended section 207 to be triggered by the adoption of an "alternative," section 25.2, providing for the termination of the terms of all elected officials upon adoption of "alternative" Group A, would be rendered superfluous. We cannot assume that the Legislature, in adopting section 25.2, "was making an empty gesture." *Handleman v. Marwen Stores Corp.*, 53 *N.J.* 404, 413, 251 *A.*2d 122 (1969). What we glean from the legislative scheme is that upon adoption of an optional plan, section 207 applies, abolishing all offices and extinguishing the terms of all elected *and* appointed officials. However, upon adoption of "alternative" Group A under section 25.1, changing the time of election, only the terms of *elected* officials are extinguished.

Aside from the clear language of section 207, we are convinced that its fundamental purpose is not to extinguish the terms of appointed officials upon adoption of "alternative" Group A under section 25.1. The purpose of section 207 is to give a "newly formed government" the opportunity to commence its operation with a clean slate (with specific exceptions) of all offices and personnel. *See Myers v. Cedar Grove Tp.*, 36 *N.J.* 51, 56, 174 *A.*2d 890 (1961). To this end, section 207 assures that "the new municipal government" should not be "hampered in its organization by a variety of holdover boards, bodies and departments." *Id.* at 57, 174 *A.*2d 890; *see also Brdw'y Nat., etc., Bayonne v. Parking Auth. Bayonne*, 40 *N.J.* 227, 235, 191 *A.*2d 169 (1963); *McCartney v. Franco*, 82 *N.J.Super.* 570, 573, 198 *A.*2d 490 (Law Div.1964), aff'd 87 *N.J.Super.* 292, 209 *A.*2d 329 (App.Div.1965).

It makes good sense to give a municipality a "clean slate" when, for example, it abandons one of the optional plans of government and adopts an entirely new plan. A change from the Mayor–Council to the Council–Manager plan, for example, would cause a wholesale change in the makeup and balance of power of the government, thus necessitating a clean sweep

under section 207. *Compare N.J.S.A.* 40:69A–36 through 40 with *N.J.S.A.* 40:69A–95. In contrast, upon adoption of an "alternative" changing the time of election, the basic structure of the governmental plan remains essentially intact. It is not a "newly formed government." *Myers, supra,* 36 *N.J.* at 56, 174 *A.*2d 890. It is improbable that the Legislature intended to abolish all offices and extinguish all terms of office simply upon a modification of an existing plan. Indeed, such a result would encourage abuse. A political faction, unable to muster the necessary percentage of signatures to trigger a change from one optional plan of government to another, *see N.J.S.A.* 40:69A–19, could effect a clean sweep by simply meeting the lower threshold under *N.J.S.A.* 40:69A–184 for adoption of an "alternative" under an existing plan.

■■ Moreover, the provisions of the Faulkner Act "cannot be construed as an entirely independent scheme, separate and apart in every respect from" other general laws. *Corrigan v. Palkoski,* 213 *N.J.Super.* 316, 321–322, 517 *A.*2d 185 (Law Div.1986), quoting *Pritel v. Burris,* 94 *N.J.Super.* 485, 492, 229 *A.*2d 257 (App.Div.1967). *See also N.J.S.A.* 40:69A–26 through 32. Plaintiff planning and zoning board members were appointed to specific, determinate terms under *N.J.S.A.* 40:55D–23, 23.1 and 69. Both *N.J.S.A.* 40:55D–23 and 69 mandate staggered appointments in order to provide for a continuity of membership on the respective boards. The obvious purpose of each statute is to maintain a reserve of experienced members upon reorganization. Such a scheme is important to sustain a high degree of competence in carrying out the boards' critically important and difficult tasks. We cannot conceive that the Legislature intended to wipe away this residuum of experience and commitment simply because a municipality decides to change the time of its election.[1]

---

[1]Defendants point to *N.J.S.A.* 40A:9–156, which provides that the terms of all appointed officials shall commence on January 1, as supportive of their

■ For the reasons we have expressed, we are satisfied that *N.J.S.A.* 40:69A–24 does not mean that modification of an optional plan concerning the time of election creates a complete and separate form of government. In our view, section 24 is simply a statement that each of the four optional plans of government, whether or not modified concerning the time of election, size and terms of council and number of wards, shall be deemed complete and separate forms of government for submission to the voters of the municipality. In other words, each of the optional plans of government, which may include one of the alternatives under section 25.1 pertaining to the time of election, size and terms of council and number of wards, shall be submitted to the voters, who then decide whether the optional plan, with the modification, shall be adopted. This reading is in accord with *N.J.S.A.* 40:69A–19, which provides that upon petition by 20% of the registered voters (in the case of Brick Township), an election shall be held upon the question of adopting any of the optional plans of government. It also provides that the petition shall designate the plan to be voted upon "which may include any of the alternatives provided in this act...."

■ For the foregoing reasons, we reverse and remand with direction that an order be entered declaring invalid the appoint-

---

position. This provision, however, has no application where municipal elections are held in May. *See Wilensky v. Gurtman,* 13 *N.J.* 405, 407, 99 *A.*2d 803 (1953). Since plaintiffs were appointed during the time the mayor and council were elected in May, the statute has no application here.

Defendants also note that Brick's Code provides that the terms of all Class IV planning board members shall run from January 1 of the year in which the appointment is made. They argue that plaintiffs Geller and Gunther, who were appointed to the planning board on July 1, 1986, should have been appointed as of January 1, 1986, and thus were only appointed to 3½-year terms. However, the term of Class IV planning board members "shall be four years." *N.J.S.A.* 40:55D–23. To the extent that the Brick Code, as construed by defendants, conflicts with the statute, it must give way. *See Gauntt v. City of Bridgeton,* 194 *N.J.Super.* 468, 489, 477 *A.*2d 381 (App.Div.), certif. den. 99 *N.J.* 148, 491 *A.*2d 664 (1984).

ments of the defendant planning and zoning board members. The order shall also provide for the immediate reinstatement of plaintiffs to their respective boards.[2]

We recognize that by virtue of our holding, defendant planning and zoning board members have been sitting without valid appointments and lawful authority. Thus, there may be raised some question as to the validity of determinations made by the respective boards since the defendants' appointments.

In our view, defendants have been acting as *de facto* officers in accordance with the judgment entered by the trial court. A *de facto* officer:

> ... is one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid so far as they involve the interests of the public and third persons, where the duties of the office were exercised, ... under color of a known election or appointment, void because the officer was not eligible, or because there was a want of power in the electing or appointing body, or by reason of some defect or irregularity in its exercise, such ineligibility, want of power, or defect being unknown to the public. [*Jersey City v. Dept. of Civil Service,* 57 *N.J.Super.* 13, 27, 153 *A.*2d 757 (App.Div. 1959), quoting *State v. Carroll,* 38 *Conn.* 449, 471–472 (Sup.Ct.Err.1871) ].

*See also Edgewater Park v. Edgewater Park Housing Auth.,* 187 *N.J.Super.* 588, 598, 455 *A.*2d 575 (Law Div.1982). This is not a case where there is a challenge to the *existence* of an office or position. *See Giannone v. Carlin,* 20 *N.J.* 511, 518–519, 120 *A.*2d 449 (1956). The challenge here is to the validity of appointments to legally existing offices. In the circumstances, principles of policy and justice compel that the interests of the public and third persons be protected. We therefore conclude that defendant members have acted as *de*

---

[2]*N.J.S.A.* 40:69A–208.1 provides that any municipality having adopted a mayor-council plan of government heretofore authorized pursuant to *L.*1950, *c.* 210, shall continue to be governed by the charter so adopted "until such time as the charter is abandoned or altered pursuant to article 1 of that act, ... *or amended pursuant to [N.J.S.A. 40:69A–25.1] of this amendatory and supplementary  act."* [Emphasis added]. Therefore, there may be a question as to whether a grandfathered plan, such as Brick's, remains viable when it is amended by adoption of an "alternative" under section 25.1. However, since the issue is not raised here, we do not address it.

*facto* board members since their appointments and hence determinations by the respective boards are not subject to challenge by virtue of the invalidation of their appointments.

Reversed and remanded for further proceedings consistent with this opinion.